**UNITED STATES of America, Appellee,**

v.

**Edwin Walker WHITE, Appellant.**

**No. 10764.**

United States Court of Appeals Fourth Circuit.

Argued April 4, 1967.

Decided May 19, 1967.

C.A. Section 2113(a) and 18 U.S.C.A. Section 2113(b), Edwin Walker White pleaded not guilty. The first prosecution ended in mistrial. White neither testified nor offered evidence. At the second three-day trial, resulting in conviction on both counts, White unsuccessfully offered testimony in support of his defense of alibi. He appeals from the judgment of the district court sentencing him to serve fifteen years imprisonment on each count, to run concurrently.

We affirm the judgment of the district court because we think the errors assigned are wholly without merit.

### The Allegedly Hearsay Statement of the Janitor and The Allegedly Prejudicial Comment by the Court

The bank teller positively and unequivocally identified White as the robber. Immediately after so testifying, she was asked what happened next. Her response and subsequent colloquy between court and counsel are set out in the margin.[1]

D. Kenneth Baker, Darlington, S. C., Court-appointed counsel, and James P. Mozingo, III, Darlington, S. C., for appellant.

Charles S. Porter, Jr., Asst. U. S. Atty. (Terrell L. Glenn, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BOREMAN and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

On January 15, 1965, the Peoples Bank of Cheraw, South Carolina, was robbed at gunpoint of $3,157.41. Charged in an indictment with having violated 18 U.S.

We think defendant's objection to the statement attributed to the janitor on the ground of hearsay was properly overruled. A general objection to evidence will not prevail if the evidence is competent for any purpose. E. g., Malatkofski v. United States, 179 F.2d 905 (1st Cir. 1950). The statement is not, of course, admissible for the purpose of showing the truth of the matter asserted, i. e., that the robber *had* dropped something. But defendant sought no limiting instruction. It is not within the hearsay rule that the robber in response to being told that he had dropped something then reached down and picked up papers that were called to his atten-

---

1. "Q. At that time what happened next?
   "A. Well, I started putting the money in the bag, and Nevers Godfrey, the janitor, walked up, and *told him that he had dropped something*. (Emphasis added.)
   "MR. BAKER: Your Honor, we object to what the janitor may have said.
   "THE COURT: On what ground?
   "MR. BAKER: I think it would be hearsay.

   "THE COURT: The *defendant* was standing right there, wasn't he? (Emphasis added.)
   "A. Yes, sir.
   "THE COURT: Go ahead.
   "A. And he told him he had dropped something, and he reached down to pick it up, and when he did, I set the alarm off then."

tion with those words. The janitor's statement is admissible to explain or characterize, if it does, the robber's subsequent conduct in retrieving what was said to have been dropped. See 6 Wigmore, Evidence §§ 1766, 1772 (3d ed. 1940). The Government asked the jury to draw the permissible inference that by retrieving papers, which he was told he had dropped, the robber acknowledged that they were his.[2]

Despite the disapproval of leading text writers,[3] the admissibility of statements such as that attributed to the janitor continue to be justified by the courts as being within the category "res gestae". Whatever its parentage, the "res gestae" expression appears to have been used as a justification for admitting evidence of oral statements attending and connected with the transaction which was the subject of inquiry, without examining too closely the possible hearsay aspects of the declaration. See, e. g., Kelly v. United States, 293 F. 689 (4th Cir. 1923); McCormick, Evidence § 174, at 585 (1954).

■ Even if the admissibility of the janitor's statement be deemed error, and we think otherwise, it seems to us entirely harmless. See Fed.R.Crim.P. 52 (a). The evidence established that White's title certificate papers were found in the bank after the robbery. Since they were in proximity to the robber's position before the teller's window, the inference that they were left by the robber is perhaps equally strong without the janitor's statement.

■ White contends that the court's question, "The *defendant* was standing right there, wasn't he?", was prejudicial to his alibi defense and amounted to an expression of the court's opinion rejecting the alibi. We agree that in the calm, deliberate atmosphere of an appel-

late court it now seems that it would have been better for the court to have said, "The *robber* was standing right there, wasn't he?" But trial judges do not have the time for reflection that we have to so carefully choose their words. Certainly that was what the district judge meant. We think his meaning was obvious to the jury because just fourteen lines above this place in the transcript the witness had positively identified White as the robber. If the remark was thought to have been prejudicial, it should have been called to the attention of the trial judge. Certainly the charge of the court fairly presenting defendant's contention of alibi cured the error, if any there was.

### The Reference To The Failure To Testify At The Prior Trial

In an effort to test the defendant's alibi, the Government quite permissibly cross-examined with respect to prior consistent statements, i. e., whether the defendant had ever previously told anyone, including Government agents, the alibi story. In response, the defendant repeatedly claimed that he *had* previously related his alibi to various persons. The Government's cross-examination ended on this note. No question had been asked and no mention made of defendant's failure to testify at his previous trial. On redirect examination, the defendant's attorney asked the questions and elicited the responses indicated below:

"Q. And you didn't testify in the trial before, did you?

"A. No, sir.

"Q. This is the first time you have testified in this connection, is it not?

"A. Yes, sir."

Subsequently, at the court's suggestion, White was asked by Government counsel whether *anybody* testified on be-

---

2. Immediately after the robbery, title certificate papers for an automobile registered in the name of Edwin Walker White were discovered on the counter in front of the teller who was robbed.

3. "The phrase 'res gestae' has long been not only entirely useless, but positively harmful. * * * No rule of evidence can be created or applied by the mere muttering of a shibboleth." 6 Wigmore, Evidence § 1767, at 182 (3d ed. 1940).

half of the defendant at the prior trial[4] and answered, "No." The court then gave an instruction requested by the defendant to the effect that no inference could be drawn from a defendant's election to offer no testimony.

Subsequently, the Assistant United States Attorney argued to the jury that two witnesses were put up by the defense to present the alibi and that it was the first time that either of those witnesses had ever told any part of that story to anybody. Defense counsel objected and remarked in the presence of the jury that the defendant "told us this story all along." During a subsequent colloquy, defense counsel stated to the court that the defendant did not object to the Assistant United States Attorney arguing that the alibi story had never been told to any law enforcing agency. Resuming his argument, the Assistant United States Attorney said: "At any rate, gentlemen, this is the first time I have ever heard that story, and I was here when the case was tried before." Immediately, the court, on its own motion, reprimanded Government counsel and forcefully restated the right of the defendant to elect at the first trial to offer no testimony.

■■ We think all of this comes within the doctrine of invited error. It was the *defense* that initially brought out that the defendant had not testified at his prior trial. Certainly the Government was entitled on cross-examination to try to elicit from the defendant for the purpose of impeaching his alibi any prior inconsistent statement that he may have made. See 58 Am.Jur. Witnesses § 688, at 374 (1948). To test his veracity, it was not improper to ask him if he had ever previously told the alibi story to anyone. That the Government contended he had not done so was a proper subject for comment and argument to the jury. Government counsel made no reference in his jury argument to the prior trial except for the phrase, "[t]his is the first time I have ever heard that story, *and I was here when the case was tried before.*" (Emphasis added.) This was provoked by defense counsel's improper statement in the presence of the jury that "He told us this story all along." Even so, Government counsel was firmly reprimanded by the court and the constitutional right of the defendant to elect to offer no testimony at the prior trial was reaffirmed. Moreover, the court fully and correctly charged the jury that they would draw no inference by reason of his having previously failed to offer evidence.

■ We find nothing in Stewart v. United States, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961), relied on by the defendant, to support this assignment of error. In that case, it was the Government, *not* the defense, that inquired into the failure to offer evidence at the previous trials. Moreover, the defense moved immediately for a mistrial. The Supreme Court held that "motion for a mistrial was entirely appropriate, and, indeed, necessary to protect the interest of petitioner." Here there was no motion for a mistrial, the defendant, instead choosing to rest his chances upon the verdict of the jury. Compare Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943). When a defendant, acting through competent counsel, chooses to open up constitutionally forbidden subject matter, he may not effectively complain that his own trial strategy denied him his constitutional rights.

Affirmed.

---

4. In response to the court's inquiry as to whether such a question would not be proper, defense counsel said: "We think that that alone would be prejudicial *unless your Honor then of course explains to the jury that he had a perfect right not to put up any testimony.*" (Emphasis added.)