STATE of Iowa, Appellee,

v.

Preston L. BASKIN, Appellant.

No. 56584.

Supreme Court of Iowa.

July 31, 1974.

Paul A. Mahr, Sioux City, for appellant.

Richard C. Turner, Atty. Gen., David E. Linquist, Asst. Atty. Gen., Zigmund F. Chwirka, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON, and HARRIS, JJ.

MASON, Justice.

Preston Baskin was convicted by a Woodbury County jury of assaulting Shirley A. Dicus with intent to commit rape in violation of section 698.4, The Code, 1973. He appeals from the judgment based on that verdict.

Shirley Dicus lived with her parents in Sioux City; her sister, Barbara Coenen, lived a short distance away. Shirley often baby-sat for Barbara's daughter, nine-year-old Robin Sitzman. February 28, 1973, Robin came to the Dicus home after school and shortly thereafter proceeded down the alley towards her home; Shirley who had been at her parents' home followed a few minutes later. Shortly after she entered Barbara's house there was a knock at the back door. Shirley opened the door and saw her niece and defendant. Robin entered and defendant allegedly forced his way in also. Shirley testified defendant asked if they knew a Del Brown or Del Baker; after saying no and allegedly asking defendant to leave, he proceeded to the dining room and used the telephone. Before using the phone defendant removed his shoes and left them by the back door.

Upon defendant's request Robin checked the directory for the names of Del Brown or Del Baker but could not find them. After using the phone defendant went into the bathroom located off the kitchen; Shirley and Robin remained in the kitchen.

Shirley then instructed Robin to stay by the back door and she herself went into the living room to the front door. She began to unlock and open the door at which time defendant, who had followed her from the kitchen, grabbed her, tore her T-shirt and threw her onto the bed in a bedroom just off the living room. Shirley further testified that at this time defendant told her not to scream or he would kill her. Further, as he started to leave the bedroom he told her to remove her clothes, tell Robin to go outside and play and all he was interested in was sex.

At this time she ran out of the bedroom to the front door and began opening it. Defendant then grabbed her again and pulled her back into the bedroom. Defendant had his hands around her neck and was apparently choking her as she continued screaming. In the meantime, Robin had run back to her grandparents' home and had gotten Shirley's father. As defendant left the bedroom Mr. Dicus entered the back door; defendant turned and ran out of the front door of the house.

Shirley called the police and Mr. Dicus pursued defendant. After easily getting away defendant came back to where Mr. Dicus was standing on a street corner and stated: "Mr. White Man, don't hurt me. I didn't mean to hurt this girl. Don't tell my wife." After Mr. Dicus told him to wait and that the police were coming, defendant allegedly pulled a knife, threatened Dicus and cut him on the wrist. Defendant then ran away. He was arrested a short time later. No knife was ever found.

Baskin testified on his own behalf and contradicted some of the State's testimony. He stated he had been drinking on the day involved and only wanted Shirley's help in dialing a telephone number. He had entered the home but had removed his shoes and left them at the back door so as not to track mud into the house. When he used the phone he called both information and the company where his girlfriend worked. He stated he followed Shirley into the bed-

room and grabbed her and placed her on the bed when she tried to run out. He denied having a knife and stated that when talking to Mr. Dicus on the street corner he took his car keys from his pocket. Defendant testified he did not intend to have sexual relations with Shirley nor did he ever solicit sexual intercourse with her.

Prior to arguments to the jury the instructions were presented to counsel for examination. At that time defense counsel made the following record:

"MR. MAHR: I object to Instruction No. 13 which defines intent. I also object to Instructions 11, 12 and 13 together because they fail to show or explain adequately and clearly to the jury the nature of the intent that they must find in this case, that is, intent to commit rape. I cite State v. Canada, 68 Iowa 397, 27 N.W. 288. (Quoting therefrom). I request Instructions 11, 12 and 13 be amended and that the following be added, preferably at the end of Instruction No. 13: 'You cannot convict the defendant of assault with intent to commit rape unless you are satisfied beyond a reasonable doubt that he intended to use whatever force might be necessary to overcome the prosecutrix and accomplish his purpose.'"

After jury arguments and prior to reading the instructions to the jury the court overruled defendant's objections to instructions 11, 12 and 13 and submitted the matter to the jury.

Defendant's motion for new trial based on the contention the verdict was contrary to the evidence and the jury was not properly instructed was overruled.

Defendant alleges the trial court erred: (1) in overruling his objections to instructions 11, 12 and 13 and refusing his requested amendment thereto and (2) in overruling his motion for new trial, particularly in regard to the sufficiency of the instructions.

I. The State contends defendant failed to preserve error in regard to the instructions.

Under section 780.35, The Code, 1971, rule 196, Rules of Civil Procedure, is made applicable to criminal prosecutions. Since this trial commenced May 15, 1973, rule 196 prior to its 1973 amendment is applicable. The full rule will not be quoted here. See State v. Gilmore, 181 N.W.2d 145, 146–147 (Iowa 1971).

The State argues defendant's objections were to preliminary drafts of the instructions and defendant failed to except to the trial court's failure to give his requested instruction and therefore failed to preserve error. It should be noted at the outset no issue was presented concerning the specificity of the objections. See State v. Hraha, 193 N.W.2d 484, 485–486 (Iowa 1972). The only issue regarding waiver concerns the timeliness of the objections.

The State insists by reason of defendant's failure to object to the instructions in their final form nothing is presented for review by this assignment, citing State v. Schmidt, 259 Iowa 972, 145 N.W.2d 631 and State v. Buchanan, 207 N.W.2d 784 (Iowa 1973).

As indicated, defendant objected to instructions 11, 12 and 13 when they were presented to counsel for examination before final argument. Defendant made no further objections until motion for new trial.

█ The right of a defendant in a criminal case to attack the court's instructions for the first time in motion for new trial is subject to two exceptions: (1) a party may expressly waive the right or (2) if the instruction was correct as given but not as explicit as a party may have desired he must request an additional instruction before the jury is charged. State v. Brown, 172 N.W.2d 152, 157 (Iowa 1969) and authorities cited.

Defendant's objection to instructions 11, 12 and 13, set out earlier, compels the conclusion defendant's complaint was that the instructions were not as explicit as he desired rather than being incorrect statements of law. Therefore, he is within the second exception noted in *Brown*. We therefore approach the assignment in that light.

■ Ordinarily, objections must be made to the instructions in their final form if they are to be considered on appeal. Rule 196, R.C.P. In other words, exceptions or objections to the preliminary draft of instructions will not support an assignment of error on appeal. State v. Schmidt, 259 Iowa at 979–980, 145 N.W.2d at 636 and State v. Clark, 187 N.W.2d 717, 719 (Iowa 1971).

The record and reporter's transcript of proceedings had in this matter disclose that trial commenced Tuesday, May 15, 1973. At the conclusion of defendant's evidence the State announced it would present no rebuttal. The record fails to indicate on what day the evidence closed. Evidently, arguments were to be made in the afternoon of this day. In any event, the court called counsel into chambers before arguments and advised them, "We are not going to read the instructions until Monday."

The court then inquired if the parties had any exceptions. The State had requested an instruction bearing on defendant's flight from the Coenen home as Mr. Dicus entered the back door which appears in the clerk's transcript in this matter. After some colloquy between court and counsel the court stated it would make a decision on whether to give the instruction Monday morning and advised defendant's counsel he would be given an opportunity to take exceptions in the event the court granted the State's requested instruction.

At this point defense counsel inquired if the court wanted a record on exceptions "now", to which the court replied, "Yes, not on that one [flight] but on all the rest."

Defense counsel then proceeded to make objections to the instructions and furnished some citations to the court.

At this time the trial court ruled on one objection and reserved ruling until he read defendant's authority on the other.

Defense counsel then objected to instructions 11, 12 and 13. The case was adjourned until Monday morning.

Monday, May 21, the court announced in chambers defendant's objection to instruction 6 had been granted and his objections to 7, 11, 12 and 13 were overruled. The State's request for the flight instruction was overruled. The instructions were then read to the jury.

The foregoing record makes this case factually distinguishable from the authorities relied upon by the State. In State v. Schmidt, 259 Iowa 972, 145 N.W.2d 631 after both sides rested "the Court provided counsel with a rough draft of the proposed instructions" and a discussion was held in chambers. There was no statement or stipulation indicating it was anything other than a *rough* draft procedure. The proposed instructions prepared by the court were not all numbered. Other than the rough draft discussion defendant took no exceptions to the court's failure to give instructions in the form suggested during discussion. This court held error in regard to the instructions was not preserved by defendant's objection to the preliminary draft.

In State v. Clark, Iowa, 187 N.W.2d 717 the court submitted the instruction in *preliminary* form at the close of the evidence. At that time defendant objected to one instruction. The final draft of the instructions was again submitted to counsel at which time attorney for defendant said he had no additional objections. He made no further record. He did not object to or state grounds for objecting to the court's failure to instruct as requested. This court held no error was preserved.

In State v. Buchanan, Iowa, 207 N.W.2d 784 the court presented its instructions in final form and afforded counsel opportunity to examine the instructions and take exceptions. With respect to the instruction challenged in the cited case defense counsel objected by stating, "We believe that is no longer the law." This is tantamount to saying the instruction did not state the law which is insufficiently specific to constitute a basis for error. In motion for new trial defendant enlarged on his earlier complaint to the specified instruction. This court held the grounds of the motion for new trial must stand or fall on exceptions taken at trial and a defendant cannot in a post-verdict motion amplify or add new grounds as an attack on instructions. It was held defendant had not preserved error.

■ Without departing from or modifying in any manner or degree the holdings announced by this court in the three cited cases it is our view in light of the record in the present case defendant's objection to instructions 11, 12 and 13 sufficiently preserved for consideration by this court the error assigned. The State's contention to the contrary is without merit.

II. In another division of its written argument the State maintains defendant cannot attack the trial court's refusal to grant his requested instruction for the first time in a motion for new trial.

■ This is true. A party may not rely on a mere refusal to give requested instructions. Rule 196, R.C.P., is just as definite in requiring objections to the refusal of requested instructions to specify the grounds thereof as is required of objections to instructions actually given. The rule requires, in order to predicate error for review upon the trial court's refusal to give requested instructions, proper exceptions must be preserved by the party timely specifying the part of the instruction requested and refused and the particular point or points of law or questions of fact in dispute which the court supposedly

erred by omission to instruct. State v. Gilmore, 181 N.W.2d at 146–147.

Rule 196, R.C.P., requires that objections to instructions set out the grounds for complaint. A party objecting has the duty to state what he complains of so the trial court has an opportunity to rule or correct the error which is now argued in this court. State v. Youngbear, 202 N.W.2d 70, 72 (Iowa 1972).

In one way or another this court has frequently said an objection to an instruction given to a jury should reveal to the trial judge the purported defect to which the objecting party makes complaint and may wish to make the subject matter of attack upon appeal. The objection should be as specific and as penetrating as the stress of the trial permits. The purpose of requiring clarity of objections is not to gratify any possible whim of the trial judge, but to afford the trial judge an opportunity to catch exactly what is in counsel's mind and thereby determine whether the objection possesses merit to an extent the instruction should be recast. In short, a party, upon objecting, must make known to the trial judge the specific objection which he may wish to urge upon appeal. If his objection then taken possesses merit and induces the trial judge to recast his words, a subsequent appeal is avoided. But if he does not disclose what is then in his mind, a needless appeal may be the ultimate result.

Defendant plainly stated in his objection that he challenged the specified instructions "because they fail to show or explain adequately and clearly to the jury the nature of the intent that they must find in this case, that is, intent to commit rape." He then requested that instruction 13 be amended by adding the provision quoted earlier.

■ In the opinion of the court defendant, by challenging instructions 11, 12 and 13 in the manner stated, was pointing out specifically to the trial court and opposing

counsel the respect in which he contended instruction 13 should be amplified and made more explicit. We do not understand from a study of the record defendant was maintaining instruction 13 was not a correct statement of law but rather was insisting the instruction did not go as far as defendant desired.

Defendant properly preserved his contention for review.

III. We turn now to the merits of defendant's attack. As stated, defendant objected in the trial court to the specified instructions "because they fail to show or explain adequately and clearly to the jury the nature of the intent that they must find in this case, that is, intent to commit rape."

But in this court defendant asserts as his first assigned error, "The court erred in overruling defendant's objections to instructions 11, 12 and 13 and his requested amendment thereto, so that the instructions to the jury would make a clear distinction between assault with intent to commit rape and assault with intent to procure sexual intercourse." He cites in support of this contention State v. Ramsdell, 242 Iowa 62, 45 N.W.2d 503.

Examination of defendant's written brief and argument filed in connection with the appeal in *Ramsdell* discloses defendant complained of instruction 6 given by the trial court because "it did not sufficiently advise the jury of the distinction between assault with intent to commit rape and assault with intent to have sexual intercourse, and, therefore, did not adequately define and inform the jury as to the crime charged; it should have, but did not state that to propose sexual intercourse, or even go to the extent of committing an assault or an assault and battery upon the prosecutrix in pressing solicitation to have sexual intercourse would not be sufficient to constitute the crime charged [assault with intent to commit rape]."

Defendant's contention in *Ramsdell* was rejected by this court.

Although we have determined in divisions I and II, supra, defendant adequately and sufficiently preserved for review the objection as made in the trial court to instructions 11, 12 and 13, the objection there urged is not the basis of the contention asserted in his first assigned error.

■ The theory of Baskin's defense was that he entered the Coenen home merely for the purpose of using the telephone and in seeking aid in obtaining a telephone number from the directory. At no point did defendant declare a theory in defense he assaulted the prosecutrix simply for the purpose of determining how troublesome it might be to have sexual intercourse with her.

There was no evidence in the record which would justify the giving of an instruction relating to the distinction between assault with intent to commit rape and assault with intent to have sexual intercourse, a distinction that has not been made altogether clear to the court by defendant's argument.

The contention urged in this assignment is without merit.

IV. In a brief point of his first assignment of error defendant insists that in order to sustain a conviction for assault with intent to commit rape the evidence must show the accused had a purpose not only to have sexual intercourse with the prosecutrix, but must have intended also to use whatever degree of force might be necessary to overcome her resistance and accomplish his object.

Insofar as this argument raises a contention there is no support in the record for the jury's verdict it is wholly untenable.

On defendant's appeal from criminal conviction based on jury verdict challenging sufficiency of evidence to sustain the verdict we view the evidence in the light most favorable to the State and accept as established all reasonable inferences tending to support action of the jury. It is necessary to consider only the supporting

evidence whether contradicted or not. Also, it is for the fact finder, not us, to decide questions of fact and determine credibility of witnesses. And a finding of guilt is binding on this court unless without substantial support in the record. State v. Still, 208 N.W.2d 887, 888 (Iowa 1973) and State v. Reeves, 209 N.W.2d 18, 21 (Iowa 1973).

The evidence when so viewed would justify a jury in finding defendant forced his way into the Coenen home, proceeded to the dining room and used the telephone, then into the bathroom and that as Miss Dicus attempted to unlock and open the front door to escape she was grabbed by defendant, her T-shirt torn and she was thrown onto a bed in the adjoining bedroom. The evidence would likewise justify a finding defendant told the prosecutrix not to scream or he would kill her, to send her young niece outside and for her to remove her own clothes as he was interested in sex. A finding would be warranted that defendant again grabbed the prosecutrix as she attempted to leave the house and pulled her back into the bedroom and attempted to choke her as she continued screaming. Defendant fled when surprised by prosecutrix' father.

It is a fair inference that defendant had in mind the procurement of sexual intercourse by the use of such force as was necessary to accomplish his purpose and was only prevented from accomplishing this by the unexpected appearance of Mr. Dicus.

In support of his first assignment defendant relies heavily on State v. Canada, 68 Iowa 397, 27 N.W. 288. However, Canada turned on a finding the evidence did not support the verdict. There is some comment in the opinion that the jury should have been more fully instructed as to the degree of force which must have been intended. We fail to find the decision helpful to defendant here. The same is true of State v. Hagerman, 47 Iowa 151, cited by defendant.

In instruction 11 the court defined an assault as "an attempt to apply unlawful physical force to the person of another coupled with the apparent ability to execute the attempt."

In instruction 12 the court told the jury, "The laws of Iowa provide that if any person ravish and carnally know any female by force or against her will, he is guilty of rape.

"The term 'ravish and carnally know,' as used in the statute and these instructions, means sexual intercourse."

Instruction 13 deals with the question of intent. It defines intent and how it is to be arrived at by the jury.

In view of the assignment relied on by defendant as a basis for reversal and the brief point urged in support thereof we find no merit in the assignment under this record.

V. In view of our determination as to the merits of defendant's first assigned error it necessarily follows that the second error assigned is likewise without merit.

The case is therefore

Affirmed.