**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles Lloyd DAVIS, a/k/a Dr. Dudley Dee Goulden, III, Defendant-Appellant.**

**No. 73-2534.**

United States Court of Appeals, Fifth Circuit.

July 5, 1974.

Rehearing and Rehearing En Banc Denied Oct. 18, 1974.

---

Robert M. Alton, Jr., Montgomery, Ala. (Court-appointed), Wendell R. Morgan, Montgomery, Ala., for defendant-appellant.

Ira DeMent, U. S. Atty., David B. Byrene, Jr., D. Broward Segrest, Asst. U. S. Attys., Montgomery, Ala., for plaintiff-appellee.

Before GODBOLD SIMPSON and INGRAHAM, Circuit Judges.

SIMPSON, Circuit Judge:

Charles Lloyd Davis appeals from his conviction on each count of a four count indictment charging conspiracy, mail fraud, and the interstate transportation of a stolen motor vehicle.[1] Davis was

---

1. Specifically, Davis was found guilty of conspiracy to commit mail fraud in violation of Title 18, U.S.C., Sec. 1341, conspiracy to transport a stolen motor vehicle in interstate commerce in violation of Title 18, U. S.C., Sec. 2312, and substantive violations of the mail fraud statute, Sec. 1341 and the Dyer Act, Sec. 2312. He was sentenced to two concurrent five year terms, consecutively followed by two additional five year terms, for a total of ten years confinement.

indicted with Ronald Wayne Harris, also known as Kenneth Ray Gibbons, who pled guilty to the indictment and was sentenced to five years confinement prior to Davis' trial and is therefore not involved in this appeal. Appellant asserts as grounds for reversal (1) prejudicial conduct by the trial court with respect to his defense of insanity at the time the offenses occurred and (2) the trial court's refusal to suppress evidence acquired in violation of his Fourth Amendment right to be free from unlawful searches and seizures. We find that error occurred with respect to his defense of insanity and reverse and remand for new trial. We uphold the search and seizure as lawful.

The facts leading to Davis' arrest are uncomplicated and may be briefly summarized. The activities related spanned the period from October 10 to October 25, 1971. Appellant and Harris secured false identification and false credit cards, the alias Dr. Dudley Dee Goulden III being used by Davis. The pair rented a Plymouth Fury in Jackson, Mississippi, and headed for Texas. In Texas they acquired an additional automobile, a 1972 Pontiac and two, female traveling companions. The foursome proceeded from Texas to other southern states, including Louisiana and Alabama, where Davis and Harris periodically cashed business checks using their respective aliases. This hegira ended with their apprehension in Montgomery, Alabama, as they were leaving the Plymouth Fury in the parking lot of the Midtown Holiday Inn. A briefcase on the front seat of the car was seized, and incriminating evidence found therein was used to support a request for a search warrant for their hotel rooms. The warrant issued, and the ensuing search of the rooms uncovered additional evidence which was used against Davis at his trial.

On September 22, 1972, the lower court conducted a competency, hearing under Title 18, U.S.C. Sec. 4244, found probable cause to believe that Davis might be insane, and committed him to the Medical Center for Federal Prisoners at Springfield, Missouri, for examination and study. The medical authorities at Springfield determined that Davis was competent to stand trial and the court was so advised by the United States Attorney on November 24, 1972. After a mental competency hearing on November 27, 1972, where the testimony of Dr. Robert J. Eardley and that of Davis was received, the district court determined that Davis was not competent to stand trial, despite the recommendation from Springfield. Dr. Eardley testified that the hospital had been unable to validate any of the personal and family history of appellant. Inconsistencies in the history were noted, and Dr. Eardley raised the possibility that Davis was a malingerer. Davis sat through the hearing with toilet paper stuffed in his ears, saying this was to keep out voices he heard. The court recommitted Davis to the attorney general pursuant to Title 18, U.S.C. Sec. 4246 on November 28, 1972, recommending further effort to establish the personal background of Davis and requesting a written report within six months. This report was received and a further competency hearing was held below on June 6, 1973, Davis being returned from Springfield for such hearing. This time the court found Davis competent based upon staff reports and Dr. Eardley's testimony. Trial of Davis on the four count indictment took place June 13–15, 1973. Prior to trial, extensive discovery was granted to appellant, including the results of all laboratory analyses and resumés of all expert or other reports, and production of all statements made by Davis. The United States was required to subpoena at government expense experts for the defense as to the sanity *vel non* of the defendant. Defense motions for judgment of acquittal were denied later at the close of the government's case and again at the close of all the testimony. The defense was based on pleas of not guilty and not guilty by reason of insanity. The jury returned a verdict of guilty as to each count of the indictment.

During cross-examination of Dr. Eardley, who testified for the government, appellant's counsel attempted to introduce as evidence the court's order of November 28, 1972, finding Davis incompetent to stand trial at that time. Counsel obviously considered this order probative of Davis' mental condition at the time of the hearing and more importantly his mental condition at the time of the indictment offense a year earlier.

From the record it appears that government counsel was about to object when the court announced that the evidence was going to be admitted before the objection could be interposed. On redirect examination of Dr. Eardley the government offered as evidence the court's June 6, 1973 finding Davis then competent to stand trial, presumably to offset the earlier finding already before the jury. The June 6 order was admitted without objection from the defense. When Dr. Eardley's examination, direct and cross, was concluded, the following exchange occurred between the witness and the trial judge:

"THE COURT: All right; and then did you file a further report with the Court that triggered the June 6 hearing?

WITNESS: Yes, sir.

THE COURT: And a copy of that order is in here—

WITNESS: Yes, sir.

THE COURT: —where the Court found that he was not competent to stand trial?

WITNESS: That is correct.

THE COURT: All right. I don't have any other questions. I thought the jury ought to have that."

I

The action of the district court in calling its adjudication of Davis' competency to the jury's attention is urged as error, as well as the propriety of the court's jury instructions as to the presumption of an accused's sanity in the face of a prior adjudication of incompetency. At a re-trial the case will probably be in a different posture when it comes time to charge the jury. In view of this fact, we do not deal in this opinion with the questions raised as to the court's charge.

The clear but unheeded mandate of Title 18, U.S.C., Sec. 4244, is in pertinent part:

"A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; *such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury.*" (Emphasis added)

With no objection raised at trial we must consider the admission of the June 6, 1972 finding of competency, within the limits imposed by the "plain error" command of Rule 52(b), F.R.Crim.P. A second question is raised by the government's brief: even if we find "plain error", was this waived by the injection of the mental competency question by the defense when it offered the November 28, 1972 order finding Davis incompetent? We determine that plain error occurred, that it was not waived by the prior action of the defense, and accordingly reverse for a new trial.

■ We discern plain error affecting substantial rights of the accused because of the specific prohibition of the introduction of evidence of a court finding of mental competency written by Congress into Sec. 4244, supra. A finding by the trial judge one week earlier that Davis was mentally competent would have such presumptive weight with a trial jury concerned with determining sanity *vel non* at the time of the offenses charged as to lead inescapably to the conclusion that Davis' right to a fair trial on this paramount issue was prejudicially affected. The violation of a statutorily granted right is usually and in most instances considered substantial. See, for example, United States v. Crowell, 5 Cir. 1971, 442 F.2d 346, 348; Amsler v. United States, 9 Cir. 1967, 381 F.2d 37, 45;

cf. Mims v. United States, 5 Cir. 1967, 375 F.2d 135, 147; Taylor v. United States, 1955, 95 U.S.App.D.C. 373, 222 F.2d 398, 404.

■ The government urges that Lyles v. United States, 1957, 103 U.S. App.D.C. 22, 254 F.2d 725, is factually identical to the case at bar and held that evidence of a prior finding of competency by the court, if admitted without objection, is not plain error, and that we should follow that case. We give *Lyles* a different reading, assuming it should guide us. In a lengthy paragraph which discusses all the facts leading to a conclusion that the appellant *waived* the conceded error, it is once mentioned that "the ruling of the trial court was not prejudicial error". Lyles v. United States, supra, 254 F.2d at 732. The logical interpretation is that the lack of prejudice resulted from waiver, not from lack of plain error. Indeed, Judge Bazelon's dissent characterizes the majority opinion as finding a "waiver by the appellant from which it concludes that the error was not prejudicial." Id., 254 F. 2d at 741. To the extent that the majority opinion in *Lyles* may be read as asserting both grounds, we disagree.

The government also suggests that the error was "invited" by defense counsel's introduction of the November 28 finding of incompetency, foreclosing objection on appeal, citing among other cases United States v. White, 4 Cir. 1967, 377 F.2d 908, cert. denied, 389 U.S. 884, 88 S.Ct. 143, 19 L.Ed.2d 180. In *White* the defense counsel brought out the fact that the defendant had not testified at a prior trial, and counsel for the government took that opportunity to explore the subject. The holding was that "[w]hen a' defendant, acting through competent counsel, chooses to open up constitutionally forbidden subject matter, he may not effectively complain that his own trial strategy denied him his constitutional rights." Id., 377 F.2d at

911. Conceding that if the opening of constitutionally forbidden subjects is susceptible of "invited error", then *a fortiori* the same rule applies to statutorily guaranteed rights, we find the doctrine inapplicable here. Appellant's counsel did not open up the subject of the June 6 *finding of competency*. Instead he opened up the related but entirely distinct subject of the earlier *finding of incompetency*. This was an invitation only in the sense that, once the earlier finding was admitted, government counsel felt obliged to mitigate its impact on the jury, and the trial court evidently felt the same compulsion: "I thought the jury ought to have that." The error occurred not because the subject opened was subject to objection as irrelevant, but because the chosen vehicle for mitigation is statutorily forbidden.

The government alternatively argues that, following *Lyles*, the introduction of evidence of a court finding of *incompetency* to stand trial, together with acquiescence in the government's introduction of a later finding by the court of *competency* to stand trial, effected a waiver of the statutory proscription. The D.C. court held five to four en banc, in *Lyles*, that the appellant had waived the exclusionary bar of Sec. 4244 under circumstances substantially identical to those of the appellant herein. We find the strong dissent of Judge Bazelon on this point more persuasive and decline to follow the majority holding in this respect.

The reasoning of the majority in *Lyles* is superficially attractive. Sec. 4244 is said to be for the benefit of the accused, statutory benefits are waivable, and under the unusual facts of the introduction of an order of incompetency together with acquiescence in the introduction of a later contrary finding, a waiver is effected. Judge Bazelon's dissent exposed the fallacy in that reasoning.[2] We agree with Judge Baze-

2. See 254 F.2d, pp. 741–743. We note in passing that Judge Bazelon further stated in his dissent that the Sec. 4244 proscription could not be waived, even if the appellant had intended to do so. Holding as we do that no waiver occurred under the facts of this case, we do not reach the question of the non-waivability of Sec. 4244.

lon that failure to object is not to be equated with waiver, relying upon the time-honored definition of waiver as "an intentional relinquishment or abandonment of a known right or privilege" in Johnson v. Zerbst, 1938, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466.

■ Support for this conclusion is found in a later decision of the D. C. Court of Appeals, Horton v. United States, 1963, 115 U.S.App.D.C. 184, 317 F.2d 595. There the judge himself, in responding to a defense objection, injected the fact that the appellant had been found competent to stand trial into the record, despite his defense of insanity. Recognizing the violation of Sec. 4244, the judge later instructed the jury to disregard his comment on the appellant's competency. The Court of Appeals held that a curative instruction was inadequate under the circumstances. Had counsel for appellant Davis objected and been overruled, the case before us would appear no differently. Failure to object cannot be held to waive error if the basic error is so grievous that it is incapable of being cured by later instruction.

## II

Davis seeks reversal grounded upon the introduction of counterfeiting paraphernalia over objection at the trial, attacking the validity of the search of the Plymouth Fury and his Holiday Inn room.

The facts as to search and seizure are not in dispute. Montgomery police officers were waiting for Davis and his companion as they pulled into the parking lot of the motel. An employee of a bank where Davis and Harris had passed a bad check that morning was with the officers and pointed out the suspects, Davis and Harris. The two men were arrested as they emerged from the Plymouth Fury in which they had just arrived. They were removed to police headquarters and the automobile was soon thereafter impounded and driven to the police station. A briefcase in plain view on the front seat of the Plymouth was taken into the police station and its contents inventoried. At this point no search warrant had been obtained. At trial the briefcase and some of its incriminating contents were received in evidence over timely objection. The contents formed the major factual basis for an affidavit in support of a search warrant for appellant's motel room. The incriminating fruits of that search were also introduced at trial.

Davis attacks both the warrantless seizure and later search of the briefcase as violative of the Fourth Amendment. The receipt of evidence taken from the motel room pursuant to the search warrant is challenged also.

Davis relies primarily on Preston v. United States, 1964, 376 U.S. 364, 84 S. Ct. 881, 11 L.Ed.2d 777. In *Preston* police arrested the occupants of a car for vagrancy, impounded the car and drove it to the police station. Subsequently officers thoroughly searched the car, and found evidence which was used to convict the occupants for a crime other than vagrancy. The Supreme Court held the search to be unlawful absent a warrant, concluding that searches remote in time or place from an arrest are not "incident to arrest" so as to justify the absence of a warrant. Additional authority is cited from other circuits relying on *Preston*.

■ Appellant's argument fails because it does not take into account cases refining Preston's broad mandate since 1964. *Preston's* holding relates only to warrantless searches purportedly "incident to arrest." It has been distinguished from situations in which probable cause for a search and seizure exists at the time of arrest. Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. *Chambers* held that in circumstances where probable cause for a search exists when a car is initially stopped, (a feature not present in *Preston*), then a later warrantless station house search does not violate the Fourth

# 1032

Amendment. Thus if the appropriation and examination of Davis' briefcase is viewed as a "search and seizure", *Chambers* would control and there would be no constitutional infirmity.

■ However, there is a stronger alternative ground for validating the actions of the police department in this case. Testimony at a hearing on Davis' Motion to Suppress with respect to the contents of the briefcase revealed that this was not a search and seizure in the sense of police accumulating evidence for later use at trial. This was what has come to be recognized as a legitimate inventory procedure. Many police departments, Montgomery's included, catalogue an arrestee's personal property when he or she is taken into custody. That practice was specifically approved (in a case coincidentally involving the Montgomery police) by this court in United States v. Lipscomb, 5 Cir. 1970, 435 F.2d 795, cert. denied, 1971, 401 U. S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331. There a forgery suspect was arrested in the hallway of the motel in which he was staying. A suitcase from his room was taken to the station and its contents inventoried. The contents led to further evidence which was used to convict Lipscomb, and we held the inventory and use in evidence of these objects seized to be constitutionally sound. In fact, Davis' argument is somewhat weaker than that of Lipscomb, because his briefcase was in plain view in the car which he had just left.

Subsequent cases in this circuit have approved the validity of an inventory procedure in situations indistinguishable from that of appellant. See, e. g., United States v. Grill, 5 Cir. 1973, 484 F.2d 990 (inventory of arrestee's suitcase held valid, and citing *Lipscomb*); United States v. Gravitt, 5 Cir. 1973, 484 F.2d 375 (custodial seizure and inventory search of arrestee's auto held valid). However viewed, the acquisition in this fashion of evidence incriminating to Davis did not offend any constitutional safeguards.

We find no infirmity in the searches either of the briefcase without warrant or of the motel room pursuant to the search warrant based in part upon the fruits of the briefcase search, and affirm the trial court's rulings to this effect.

However, because of the plain error found in Part I permitting the findings of competency at the 4244 hearing to go before the jury, we reverse the conviction below and remand for new trial.

Reversed and remanded.