STATE of Iowa, Appellee,

v.

Gary James COLLINS, Appellant.

No. 57558.

Supreme Court of Iowa.

Dec. 17, 1975.

Frank M. Krohn, Newton, for appellant.

Richard C. Turner, Atty. Gen., John G. Mullen, Asst. Atty. Gen., and Kenneth L. Whitehead, County Atty., for appellee.

McCORMICK, Justice.

Defendant appeals his conviction and sentence for assault with intent to commit rape in violation of § 698.4, The Code. The questions presented are whether the trial court erred (1) in overruling · defendant's motion to dismiss for want of a speedy trial, (2) in overruling his motion for mistrial, (3) in overruling his *Miranda* objection to testimony of a psychiatrist, and (4) in overruling his motion for directed verdict made at the close of the evidence.

I.   The charge in this case was brought by county attorney's information filed January 28, 1974.   Defendant filed a motion to dismiss on July 8, 1974, alleging he had been denied his right under § 795.2, The Code, to be brought to trial within 60 days of the filing of the county attorney's information.   The State contended good cause existed for the delay, and the trial court overruled the motion on that ground.   Defendant's trial commenced July 17, 1974.

Since defendant was not tried within 60 days after the charge was brought in district court, he was entitled to have the charge dismissed on his timely motion unless the State demonstrated good cause for the delay beyond that period.

Applicable principles are summarized in several recent cases.   See, *e. g.,* *State v. Albertsen,* 228 N.W.2d 94, 97–98 (Iowa 1975).   In this case, we agree with the finding that good cause for delay was shown.   The delay was substantially attributable to defendant.   The first three months' delay was caused by compliance with an order of the court sustaining defendant's motion for mental evaluation. Defendant was admitted to the medical security facility at Oakdale for mental examination and evaluation in February and was not released until April 30, 1974.   He filed a demand for speedy trial seven days later, on May 7, 1974.   At his arraignment on May 13, 1974, he entered a plea of not guilty. On June 3, 1974, he filed a notice of his intention to rely upon a defense of insanity. § 777.18, The Code.   One of the listed witnesses was Dr. Romullo Lara, a psychiatrist who had examined defendant at Oakdale. Two days later the State filed a notice of additional testimony indicating its intention to call Dr. Lara as a State witness.   Additional time was taken by a motion in limine filed by defendant.   Further delay was caused by fixing the trial date to accommodate Dr. Lara's schedule.

Under this record, the trial court did not err in overruling defendant's motion to dismiss.

II. Defendant's motion for mistrial resulted from testimony of Dr. Lara as a witness for the State. The witness recited the history taken from defendant. Included in the history was a statement that, "He says * * * he is charged with assault with intent to commit rape, as well as aiding and abetting a jail break." Later, out of the presence of the jury, defense counsel moved for mistrial on the ground this testimony improperly referred to an escape charge for which defendant was not then on trial. The trial court overruled the motion but admonished the jury to disregard the challenged testimony.

A trial court has discretion in ruling upon a motion for mistrial. *State v. Cage,* 218 N.W.2d 582, 586 (Iowa 1974). The limits of that discretion were not exceeded here.

III. A second problem arose during Dr. Lara's testimony. He testified he did not require defendant as part of the psychiatric examination to relate his version of the events upon which the assault with intent to commit rape charge was based. Nevertheless, he said defendant wished to explain his version of the incident and did so. When Dr. Lara was asked to repeat what defendant told him, defense counsel objected on the ground defendant had not been given *Miranda* warnings. The objection was overruled, and Dr. Lara repeated defendant's alleged statements.

The sole issue raised in defendant's assignment of error is whether statements made by a defendant to a state psychiatrist examining him pursuant to a court order entered upon the defendant's application are admissible against the defendant at trial when the statements were made without prior *Miranda* warnings to the defendant by the psychiatrist. Defendant contends Dr. Lara should have advised him of his privilege against self-incrimination before discussing the charge with him. See *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In *Miranda,* the Supreme Court barred the use of statements "stemming from custodial interrogation of the defendant unless [the prosecution] demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." The court added, "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. We have held *Miranda* prohibits law enforcement officials from eliciting incriminating statements by having a third party ask their questions for them. *State v. Flaucher,* 223 N.W.2d 239 (Iowa 1974); *State v. Cullison,* 215 N.W.2d 309 (Iowa 1974). However, this case does not present that kind of situation. Defendant was not being subjected to custodial interrogation nor was he being questioned in behalf of law enforcement officers. The *Miranda* warnings were not required. See *Ramer v. United States,* 411 F.2d 30, 38 (9 Cir. 1969), cert. denied, 396 U.S. 965, 90 S.Ct. 445, 24 L.Ed.2d 431 ("We are unwilling to expand the mandate of *Miranda* to the extent sought by the appellant."). See generally, Marcus, Pre-Trial Psychiatric Examination: A Conflict With the Privilege Against Self-Incrimination, 5 Crim.L.Bull., No. 10, 497.

The trial court did not err in overruling defendant's objection to Dr. Lara's testimony.

IV. In contending the trial court erred in overruling his motion for directed verdict made after both parties rested, defendant asserts the evidence was insufficient for jury consideration on the element of intent. The same argument was made and rejected in *State v. Baskin,* 220 N.W.2d 882, 887–888 (Iowa 1974). No useful purpose would be served by reciting the evidence in this case. It suffices to say that here, as in *Baskin,* the evidence was suffi-

cient to support a fair inference by the jury that defendant had in mind the procurement of sexual intercourse by the use of such force as was necessary to accomplish his purpose.

The trial court did not err in overruling his motion for directed verdict.

We find no merit in defendant's assignments of error.

Affirmed.

All Justices concur, except RAWLINGS, J., who concurs specially.

RAWLINGS, Justice (concurring specially).

Confining myself, as does the majority, to the sole "Miranda warning" issue asserted by defendant in support of a reversal, I too find an affirmance is in order.

On the other hand, the situation instantly involved is to me of such magnitude as to justify if not necessitate some overview regarding self-incriminating statements made by an accused in course of a court-ordered psychiatric examination as to sanity at time of the event.

I. At the outset most, if not all, courts have approached the problem from two separate but interrelated avenues, i. e., court-compelled vs. defense-invited evaluations. It still remains, however, no meaningful evaluation can be achieved in either such instance other than by a thorough, wide-ranging and intimate discussion between an accused and a psychiatrist, designed to elicit in-depth information from the former regarding past crimes or antisocial conduct, personality-molding experiences and subconscious motivating ideas. See *State v. Whitlow*, 45 N.J. 3, 210 A.2d 763, 771 (1965); Meyers, "The Psychiatric Examination", 54 J.Crim.L.C. & P.S. 431 at 435–438 (1963). And any inhibition, direct or indirect, which may be fastened upon such essential dialogue is self-defeating,[1] at the same time often beset with tangential troublesome problems, illustratively coercion,[2] and possible confinement in perpetuity for defendant's noncooperation.[3]

II. At this point the matter of self-accusation comes into play.

Admittedly, *Schmerber v. State of California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) says the Fifth Amendment protects an accused only from being compelled to testify against himself, *or otherwise provide the State with evidence of a testimonial or communicative nature*. 384 U.S. at 760–761, 86 S.Ct. 1830–1831.

The *Schmerber* Court also distinguished between admissibility of a blood test on one hand and "compelling communications or testimony" or "compulsion which makes a suspect or accused the source of 'real or physical evidence.'" 384 U.S. at 764, 86 S.Ct. at 1832.

It therefore follows, blood sampling stands on a different footing than does a psychiatric examination. Further in that regard, any determination as to whether statements made in course of the latter are testimonial in nature depends upon usage of the information thus obtained. When employed as evidence going to the issue of guilt or innocence it can be nothing other than communicative or testimonial. See 5 Crim.L.Bull. 497, 501 (1969).

In this vein, most courts have adopted the view that an accused must cooperate, if possible, in the conduct of a psychiatric examination. And generally any statements made by a defendant in course thereof are deemed admissible in evidence *with regard to the matter of legal responsibility*. But when those relating to guilt are admitted, several courts have held the jury must be instructed on the limited probative force of any such self-incriminating statements, i.

1. 26 Stan.L.Rev. 55, 66 (1973).

2. *Leyra v. Denno*, 347 U.S. 556, 559–560, 74 S.Ct. 716, 718, 98 L.Ed. 948 (1954).

3. *Tippett v. State of Maryland*, 436 F.2d 1153, 1161 (4th Cir. 1971); 26 Stan.L.Rev. at 60. See also Code Chapter 665.

e., that they are not to be considered in resolving the guilt issue. See *State v. Obstein,* 52 N.J. 516, 247 A.2d 5, 11–12 (1968); *State v. Whitlow, supra.* Noticeably, however, *Whitlow* recognized the inherent difficulty juries would inevitably encounter in attempting to obey any such instructional restriction. 210 A.2d at 773.

Moreover, validity of the aforesaid procedure is at best doubtful. In *Jackson v. Denno,* 378 U.S. 368, 388–389, 84 S.Ct. 1774, 1786–1787, 12 L.Ed.2d 908 (1964), the Court unmistakably condemned the practice of submitting to a jury the question of voluntariness of a confession together with the guilt issue. By the same token, when a jury, as in the case at bar, has heard a psychiatrist relate incriminating statements made to him by an accused during a mental examination, those utterances unavoidably become so deeply implanted no juror could disregard them even though told by the court to do so. In any event, it will usually, if not always, be subconsciously the decisive factor whenever uncertainty lingers in the mind of a juror as to proof of guilt beyond a reasonable doubt.

A few jurisdictions have attempted to circumvent the above quandary by adoption of a bifurcated hearing or "sequential order of proof" approach. Such is, however, a relatively cumbersome and expensive procedure to be avoided where reasonably possible. See Louisell & Hazard, Insanity as a Defense: The Bifurcated Trial, 49 Calif.L. Rev. 805 (1961); 5 Crim.L.Bull. 497, 504 (1969); 10 Am.Crim.L.Rev. 431, 458–463 (1972). I shall later return to this subject.

Another proposed solution, voiced in *Pope v. United States,* 372 F.2d 710 (8th Cir. 1967), is adoption of the "waiver" theory where an accused has requested the psychiatric examination. See generally *United States v. Schultz,* 431 F.2d 907, 911 (8th Cir. 1970). But see *Commonwealth v. Pomponi,* 447 Pa. 154, 284 A.2d 708, 710–711 (1971). Several troublesome questions are also here involved. Surely, an insanity plea cannot be equated with intentional waiver of the Fifth Amendment privilege against self-in-crimination. Otherwise, a defendant is placed on the horns of an imponderable dilemma. By electing to assert an insanity defense he waives his privilege against self-incrimination. The unconscionability of this paradox is self-evident. As observed in *State v. Raskin,* 34 Wis.2d 607, 150 N.W.2d 318, 326 (1967):

"It is argued also by the state the filing of the plea of insanity waives any privilege of self-incrimination and therefore the accused must answer questions in the examination even though the responses may be incriminatory. We do not agree. This concept puts a *quid pro quo* or price tag on the assertion of the plea of insanity."

Touching on the same point is *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968) where the Court declared: "[I]t [is] intolerable that one constitutional right should have to be surrendered in order to assert another." See also 10 Am.Crim.L.Rev. at 450–452.

I further find more than minimal cogency in this statement by Black, J., dissenting in *Williams v. Florida,* 399 U.S. 78, 112, 90 S.Ct. 1893, 1912, 26 L.Ed.2d 446 (1970):

"The defendant, under our Constitution, need not do anything at all to defend himself, and certainly he cannot be required to help convict himself. Rather he has an absolute, unqualified right to compel the State to investigate its own case, find its own witnesses, prove its own facts, and convince the jury through its own resources. Throughout the process the defendant has a fundamental right to remain silent, in effect challenging the State at every point to: 'Prove it!'"

It is also well settled, in this jurisdiction, that if an accused pleads not guilty by reason of insanity the State must prove, beyond a reasonable doubt, all elements of the offense charged, including defendant's legal capacity to commit the offense. See *State v. Thomas,* 219 N.W.2d 3, 5 (Iowa 1974); case note, 24 Drake L.Rev. 246 (1974); Annot., 17 A.L.R.3d 146.

By virtue thereof it has been held that when a defendant places his or her sanity in issue the State may have benefit of a concomitant psychiatric examination. See *United States v. Schultz,* 431 F.2d at 910–911; *United States v. Albright,* 388 F.2d 719, 722–726 (4th Cir. 1968); *State v. Whitlow, supra; Lee v. County Court of Erie County,* 27 N.Y.2d 432, 318 N.Y.S.2d 705, 712, 267 N.E.2d 452, 457, cert. denied, 404 U.S. 823, 92 S.Ct. 46, 30 L.Ed.2d 50 (1971). See also Breitel, J., concurring in *People v. Avant,* 33 N.Y.2d 265, 352 N.Y.S.2d 161, 167, 307 N.E.2d 230, 234 (1973); 26 Stan.L. Rev. at 63–65. But see *United States v. Davis,* 496 F.2d 1026, 1030–1031 (5th Cir. 1974); *Commonwealth v. Pomponi,* 284 A.2d at 709–711. Here again, the above noted coercion problem is involved. Additionally, the defendant may be inclined to deceive and suppress evidence while being thus compulsorily examined. See 26 Stan.L.Rev. at 66.

Finally, on this subject, it is questionable whether the "waiver" concept is legitimately applicable in a situation such as instantly presented. See *State v. Holderness,* 191 N.W.2d 642, 646 (Iowa 1971). See also *People v. Avant, supra;* 83 Harv.L.Rev. 648, 667 (1970).

Mindful of the foregoing, it is to me apparent the unbridled testimonial use of a defendant's self-incriminating statements to a psychiatrist in course of an examination as to the accused's sanity at time of the event is beset with unavoidable perplexities and an insurmountable fair-play barrier.

III. The spotlight now focuses upon a defense-invited psychiatric analysis as opposed to compelled evaluation of defendant's mental status stemming from a prosecution request or sua sponte court order.

First considered is the examination brought about by reason of an indigent defendant's request. See Hall, Kamisar, LaFave and Israel, Modern Criminal Procedure, 151–159 (3d ed. 1969; Annot., 34 A.L. R.3d 1256, 1275–1282. In such event the accused is supplied the benefit of a medical diagnosis at State expense which he, if affluent, could have otherwise obtained. See *Griffin v. People of State of Illinois,* 351 U.S. 12, 19, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956). And, as this court said in *State v. Bedel,* 193 N.W.2d 121, 124 (Iowa 1971):

"The physician-patient privilege is intended to foster free and full communication between the physician and the patient in diagnosis or treatment of the patient's ills. This privilege is not designed, nor will it be so extended, to act as a shield behind which a patient may conceal information, though made to his physician, which is not necessary and proper to enable the physician to perform his profession skillfully. See *Gibson v. Ladd, Blood Test to Determine Intoxication, Physician-Patient Privilege,* 24 Iowa L.Rev. 191, 255–256 (1939); Wigmore, Evidence, § 2380a, pp. 828–832."

It could therefore be plausibly argued the physician-patient privilege is applicable to any such defense-invited examination. Supportively, the court said in *State v. Evans,* 104 Ariz. 434, 454 P.2d 976, 978 (1969):

"The obvious policy underlying the physician-patient privilege is that patients should be encouraged to make full and frank disclosures to those who are attending them. While we do not believe that allowing [a doctor] to testify about his conclusions concerning defendant's sanity derogates from this policy, we do think that to permit even a psychiatrist acting for the court to transmit a defendant's incriminating statements to a jury is fundamentally unfair. In *Lisenba v. People,* 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 (1941), Justice Roberts stated: 'The aim of the requirement of due process is * * * to prevent fundamental unfairness in the use of evidence whether true or false.' 314 U.S. at 236, 62 S.Ct. at 290."

Understandably, the defendant may waive any such privilege, either intentionally or by invitation, i. e., "opening the door" in course of trial. See *United States v.*

*White,* 377 F.2d 908, 911 (4th Cir. 1967), cert. denied, 389 U.S. 884, 88 S.Ct. 143, 19 L.Ed.2d 180. See generally McCormick on Evidence, § 134 (2d ed. 1972). But as to waiver by absence of testimonial objection see *United States v. Davis,* 496 F.2d at 1030–1031.

Next entertained is the matter of compulsory psychiatric examination of an accused, either upon request by the prosecution or sua sponte order of the court. Here the psychiatrist becomes an agent for the State. Singularly pertinent is this statement from *In re Spencer,* 63 Cal.2d 400, 410, 46 Cal.Rptr. 753, 760, 406 P.2d 33, 40 (1965):

"In *Massiah v. United States,* supra, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246, the United States Supreme Court held that 'the petitioner was denied the basic protections of that guarantee [of counsel] when there was used against him at his trial evidence of his incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel.' Although the court-appointed psychiatrist, an agent of the court, does not necessarily seek to elicit incriminating statements for use by the prosecution as did the agent in *Massiah,* he does question a defendant about the facts of the crime, and any incriminating statements of a defendant so procured may be utilized by the prosecution at the guilt trial.

"The fact that the purpose of the psychiatric interview is not to gather evidence for the prosecution serves to compound the unfairness of the psychiatrist's testimony; an agent of the court in reality lulls a defendant into making incriminating statements that may be used against him at the guilt trial. (Cf. *Leyra v. Denno* (1954) 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948; Diamond & Louisell, The Psychiatrist as an Expert Witness: Some Ruminations and Speculations (1965) 63 Mich.L.Rev. 1335, 1349.) The psychiatric examination occurs during a ' "critical period of the proceedings" ' (*Massiah v.*

*United States,* supra, 377 U.S. 201, 205, 84 S.Ct. 1199, 12 L.Ed.2d 246); if defendant's statements to the psychiatrist may be introduced at the guilt trial, defendant's need of counsel is as acute during the psychiatric interview as during the police interrogation."

See also Marshall, J., dissenting to dismissal of certiorari in *Miller v. State of California,* 392 U.S. 616, 88 S.Ct. 2258, 20 L.Ed.2d 1332 (1968); cf. *State v. Cullison,* 215 N.W.2d 309, 314–315 (Iowa 1974).

It may therefore be reasonably contended the Fifth Amendment privilege becomes applicable in the above noted situation. See Harlan, J., concurring in *California v. Byers,* 402 U.S. 424, 435–437, 91 S.Ct. 1535, 1541–1542, 29 L.Ed.2d 9 (1971); *United States v. Albright,* 388 F.2d at 726; *State v. Obstein,* 247 A.2d at 10–11; *Haskett v. State,* 255 Ind. 206, 263 N.E.2d 529, 531 (1970); 8 Wigmore on Evidence, §§ 2251–2252 (McNaughton rev. (1961); 10 Am. Crim.L.Rev. at 434–458; 5 Crim.L.Bull. at 500–506.

There may also be some degree of authenticity in an argument to the effect the physician-patient privilege is here again applicable. See *State v. Evans, supra.*

IV. The foregoing panoramic backdrop of untoward elements makes it to me evident the problem at hand can and should be resolved by adoption of a suitable, inoffensive and realistic standard.

I would therefore hold that where a defendant is examined as to his or her sanity as bearing upon the accused's criminal responsibility for the act charged, whether such be initiated by the defendant, the prosecution or sua sponte order of the court, any self-incriminating information obtained from an accused in course thereof shall not be admitted in evidence, over appropriate objection, during trial of the examined defendant in which guilt or innocence is to be determined. See *United States v. Davis,* 496 F.2d at 1030–1031; *People v. Stevens,* 386 Mich. 579, 194 N.W.2d 370, 371–373

(1972). The aforesaid objection can, of course, be effectively voiced before trial. See *State v. Untiedt,* 224 N.W.2d 1, 3 (Iowa 1974).

It is understood, however, that if defendant (1) first knowingly consents to the introduction of such otherwise precluded testimony or (2) opens the door to the subject matter in course of trial, he may not then effectively complain since his own strategy has invited presentation of such evidence. See *United States v. Davis,* 496 F.2d at 1030.

The foregoing standard is, in my humble opinion, essential to a fair trial while still permitting introduction of other admissible opinion evidence regarding a defendant's sanity at time of the event.

V. If, however, it be found that a psychiatrist is unable to testimonially evaluate defendant's legal responsibility absent reference to incriminatory statements made by the accused, then a bifurcated hearing would be unavoidable and appropriate. In that event, trial on the guilt issue should be first held and if the accused is found guilty a jury determination as to legal responsibility would follow. See generally *Contee v. United States,* 133 U.S.App.D.C. 261, 410 F.2d 249, 250 (1969); *Holmes v. United States,* 124 U.S.App.D.C. 152, 363 F.2d 281, 282–283 (1966); *State v. Raskin,* 150 N.W.2d at 326; 10 Am.Crim.L.Rev. at 458; 5 Crim.L.Bull. at 504; 1964 Wis.L.Rev. at 681.

Of course, justice would be better served and the procedural process expedited by a pretrial ascertainment regarding the psychiatrist's ability to express his or her opinion as to defendant's legal responsibility without reference to self-incriminating statements by the accused. See *State v. Peterson,* 219 N.W.2d 665, 668–669 (Iowa 1974).

Whether separate juries must be provided should a bifurcated hearing be necessary is a question which need not be now resolved. Compare 10 Am.Crim.L.Rev. and 5 Crim.L. Bull., both *supra,* with 1964 Wis.L.Rev. cited above. See also *State v. Monroe,* 236 N.W.2d 24 (Iowa 1975).