Wachtler, J.
The defendants are public contractors. In 1969 they entered into a contract with the City of Albany to perform snow removal services during the winter of 1969-1970, In March of 1971, they were subpoenaed to appear and produce certain business records before the Albany County Grand Jury investigating the purchasing practices of the City of Albany. They appeared, executed a limited waiver of immunity — extending only to their performance of the snow removal contract — and surrendered the subpoenaed records. On May 26, 1971 the Grand Jury returned two indictments charging them with grand larceny (Penal Law, § 155.35) and knowingly offering a false instrument for filing (Penal Law, § 175.35).
Prior to trial they moved to dismiss the indictments claiming that they had been compelled by section 103-b of the General *269 Municipal Law to testify and furnish incriminating evidence to the Grand Jury in violation of their constitutional rights.
Section 103-b of the General Municipal Law states in part: “ Any person who, when called before a grand jury * * * to testify in an investigation concerning any transaction or contract had with the state [or] any political subdivision thereof * * refuses to sign a waiver of immunity against subsequent criminal prosecution or to answer any relevant question concerning such transaction or contract * * * shall be disqualified from thereafter selling to or submitting bids to or receiving awards from or entering into any contracts with any municipal corporation * * * for a period of five years after such refusal or until a disqualification shall be removed ”. Section 103-a provides that all contracts awarded by a municipal corporation shall contain a clause to this effect and another clause permitting the municipality to terminate all existing contracts without incurring penalty.
At the time the subpoenas were issued the defendants apparently had no existing public contracts but they nevertheless maintain that they felt compelled by the General Municipal Law to execute the limited waiver rather than lose the right to compete for future contracts. This, it is argued, constitutes a form of coercion prohibited by the Supreme Court in Garrity v. New Jersey (385 U. S. 493).
In Garrity the court held that a statement obtained from a police officer by threat of loss of public employment is coerced within the meaning of the Fifth Amendment and may not be used at a subsequent criminal prosecution. The corollary of this principle was announced in Spevack v. Klein (385 U. S. 511). There an attorney who refused to testify at a disciplinary proceeding on the ground that his testimony would tend to incriminate him, was disbarred. The Supreme Court reversed holding that the petitioner had been penalized for exercising his Fifth Amendment privilege which violated the basic ‘ ‘U right of a person to remain silent * * * and to suffer no penalty * * * for such silence(385 U. S., at pp. 514-515, n. 2).
In these decisions the Supreme Court considered and recognized the right of the State to call upon public servants and persons having a special duty to the State to account for their *270 activities. The limits of this power however were finally clarified in Gardner v. Broderick (392 U. S. 273). In Gardner a New York City police officer was summoned to appear before a Grand Jury investigating gambling activities in the city. He was advised of his rights but was also informed that if he refused to execute a waiver of immunity he could lose his job. When he refused to execute the waiver, he was discharged and once again the Supreme Court reversed, observing that:
“ If the appellant, a policeman, had refused to answer questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself, Garrity v. New Jersey [385 U. S. 493], supra, the privilege against self-incrimination would not have been a bar to his dismissal.
“ The facts of this case, however, do not present this issue. Here petitioner was summoned to testify before a grand jury in an investigation of alleged criminal conduct. He was discharged from office, not for failure to answer relevant questions about his official duties, but for refusal to waive a constitutional right * * * [T]he mandate of the great privilege against self-incrimination does not tolerate the attempt, regardless of its ultimate effectiveness to coerce a waiver of the immunity it confers on penalty of the loss of employment.” (392 U. S., at pp. 278, 279.)
What distinguishes this case and divided the courts below is the fact that the defendants here are public contractors and not public employees or license holders. The trial court found that this was a distinction without legal significance (69 Misc 2d 445) but the Appellate Division disagreed and reversed the order dismissing the indictments (39 A D 2d 389). There it was successfully argued that the public contractor possesses nothing more than the right to bid for public employment and having other sources of inebme outside the public sphere may assert his constitutional rights without fear of losing his sole means of livelihood, as does the public employee or license holder.
While this appeal was pending before our court, the Supreme Court resolved the issue by rejecting the argument that a dif *271 ferent rule is applicable to public contractors. (Lefkowitz v. Turley, 414 U. S. 70.) In affirming a Federal court decision declaring sections 103-a and 103-b of the General Municipal Law unconstitutional (Turley v. Lefkowitz, 342 F. Supp. 544) the court stated at pages 83, 84 “ We fail to see a difference of constitutional magnitude between the threat of job loss to an employee of the State, and a threat of loss of contracts to a contractor. * * * A significant infringement of constitutional rights cannot be justified by the speculative ability of those affected to cover the damage.”
In sum, the State may compel any person enjoying a public trust to account for his activities and may terminate his services if he refuses to answer relevant questions, or furnishes information indicating that he is no longer entitled to public confidence (Gardner v. Broderick, 392 U. S. 273, supra). But testimony compelled in this manner, under threat of loss of public employment, may not be used as a basis for subsequent prosecution (Garrity v. New Jersey, 385 U. S. 493, supra). “ Bather, the State must recognize * * * that answers elicited upon the threat of the loss of employment are compelled and inadmissible in evidence.” (Lefkowitz v. Turley, supra, at p. 85.)
Obviously, then, the Grand Jury considered evidence that had been obtained at the expense of a constitutional right. As a general rule this does not require á dismissal of the indictment. Ordinarily the mere fact that some inadmissible evidence has intruded into the criminal proceedings does not necessarily affect the validity of those proceedings. To this extent the rule which applies to trials applies with equal force to Grand Jury proceedings. But although a trial error of this nature must be found to have been harmless beyond a reasonable doubt (People v. Cefaro, 23 N Y 2d 283; People v. McKinney, 24 N Y 2d 180) the rule is quite different when the inadmissible evidence has been submitted to a Grand Jury.
Since the Grand Jury performs the limited function of determining whether the People have in their possession sufficient evidence to present a prima facie case, the submission of some inadmissible evidence during the course of this proceeding is held to be fatal only when the remaining legal evidence is insufficient to sustain the indictment. (People v. Eckert, 2 N Y 2d 126; People v. Leary, 305 N. Y. 793; People v. Robinowitz, *272 277 App. Div. 793, affd. 301 N. Y. 763; see, also, People v. Oakley, 28 NY 2d 309.)
This general rule however is inapplicable when the Grand Jury has considered testimony from a witness who is a “ target ” of the investigation — and it is undisputed that in the case now before us, the defendants fall into this category. Under these circumstances, the rule established in People v. Steuding (6 N Y 2d 214) governs. In that case we said: “ By virtue of the Constitution of this State (art. I, § 6) —and it is solely the Constitution of New York with which we are now concerned — a prospective defendant or one who is a target of an investigation may not be called and examined before a Grand Jury and, if he is, his constitutionally-conferred privilege against self incrimination is deemed violated even though he does not claim or assert the privilege. * * # A violation of the constitutional privilege carries with it a dismissal of the indictment returned by the Grand Jury before which the defendant testified.” (People v. Steuding, supra, at pp. 216-217; emphasis added.) We also indicated that this requirement of mandatory dismissal is accompanied by an exclusionary rule protecting the defendant “ not only from indictment based on any incriminating testimony which he may have given, but also from use of such evidence ” (Steuding, supra, at p. 217).
But this does not mean that the defendants have received automatic immunity for all time for any transaction revealed by them during the Grand Jury proceeding, and our subsequent decision in People v. Laino (10 N Y 2d 161, 173) made it quite clear that ‘ ‘ reindictment is possible if sufficient evidence, independent of the evidence, links, or leads furnished by the prospective defendant, is adduced to support it ”. This is so because “ Complete immunity from prosecution may be obtained by a prospective defendant, or any witness, only by strict compliance with the procedural requirements of our immunity statutes ” (People v. Laino, supra, at p. 173). The law in effect at the time the appellants appeared before the Grand Jury (Code Crim. Pro., § 619-c) required an affirmative claim of the privilege against self incrimination. Under that statute an invalid waiver, as in the case now before the court, would not confer full transactional immunity. (But compare CPL 190.40, subd. 2.)
*273 Thus although sections 103-a and 103-b of the General Municipal Law as presently enacted are unconstitutional, the appellants are not immune from future prosecution, nor has the municipality lost the right to call upon them to account for their pubEc trust, provided only that in all subsequent proceedings their constitutional rights must be fully recognized. Accordingly, the order of the Appellate Division should be reversed and the order of the County Court reinstated.