Joseph Harris, J.
The defendant makes this motion for the following relief: (1) an examination of the Grand Jury minutes; (2) an order of discovery and inspection; (3) a bill of particulars; and (4) an order pursuant to Sandoval.
The defendant, by this indictment, has been charged with *1007 grand larceny in the third degree in that he stole property by means of extortion.
Section 155.05 (subd 2, par [e], cl [v]) of the Penal Law defines extortion, insofar as it is applicable to this case, as follows: "A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will * * * Expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule”.
An examination of the Grand Jury minutes reveals that a question exists as to whether there was any evidence before the Grand Jury by which the grand jurors could make a determination that the exposing of the secret or publicizing of the asserted fact would tend to subject the complainant to hatred, contempt or ridicule.
At about 8:30 p.m. on December 15, 1976, the complainant was at the apartment of the defendant along with three companions of the defendant. During the course of this evening, two photographs were taken of the complainant allegedly showing her in a compromising position. The defendant said to her that she could have the pictures for $150 but if she did not pay he would send the pictures to where her father works and to her school.
The defendant told the complainant she had 48 hours to get the money and that he would call her.
Two days later on December 17, the complainant reported the incident to the Watervliet Police Department. On that evening the defendant called the complainant and asked her if she had the money and told her to meet him in the Price Chopper parking lot at 8:30 p.m. That evening, with the police observing, one of the defendants exchanged one of the photographs with the complainant for $50 in marked bills.
Without inquiring into the specific contents of the photographs and without showing- the photographs to the Grand Jury, the District Attorney asked the complainant in the Grand Jury proceeding if she would be embarrassed and subjected to ridicule if the photographs were sent to her school or to her father. She indicated that she would be.
As part of the prima facie case which the People must present (People v Avant, 33 NY2d 265), there must be evi *1008 dence of the nature of the secret or asserted fact which tends to subject the complainant to hatred, contempt or ridicule. The question is, what is the standard by which this evidence should be measured? Should the standard be whether the reasonable person would be subject to hatred, contempt or ridicule if the secret is publicized, or does a subjective standard prevail, where the defendant takes his victim as he finds him, however sensitive the victim’s feelings may be, and the trier of the facts is bound by the complainant’s testimony.
The provisions of the Penal Law "must be construed according to the fair import of their terms to promote justice and effect the objects of the law.” (Penal Law, § 5.00.)
Throughout the Penal Law various sections deal with a person’s response or reaction to certain situations or stimuli. Generally the law requires that under these specific conditions the response must be reasonable or be based on a reasonable belief, and the reasonableness of the response or belief is a question of fact for the jury.
For a person’s use of physical force against another to be justifiable and not criminal, that person must have a reasonable belief that such force is necessary to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force. (Penal Law, § 35.15, subd 1.)
Under certain circumstances it is an affirmative defense to a charge that a person committed a crime that he was coerced to do so. But this defense will prevail only if the coercion is of such a degree that a person of reasonable ñrmness in his situation would have been unable to resist. (Penal Law, § 40.00, subd 1.)
The law has defined certain conduct to be criminal when the result proscribed occurs because a person acted recklessly or with criminal negligence. The measure of what is reckless conduct or what constitutes criminal negligence is, generally speaking, that conduct which "constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.” (Penal Law, § 15.05, subd 3; emphasis added.)
In any prosecution for murder in the second degree, it is an affirmative defense that: "The defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant’s situation under the circumstances as the *1009 defendant believed them to be.” (Penal Law, § 125.25, subd 1, par [a]; emphasis added.)
Thus it can be seen that when the law deals with a person’s response to some agent or stimuli, generally for that response to be of consequence it must be based on more than a hunch, whim or guess. Nor is the response justified if it emanates from a character that bends in the meekest breeze of adversity.
In the instant case, the only evidence before the Grand Jury concerning the contents of the photographs were the complainant’s avowals that she would be subjected to ridicule and embarrassment if the photographs were sent to her school or to where her father worked.
Thus the only basis for the Grand Jury’s determination that the publication of the photographs tended to subject the complainant to hatred, contempt or ridicule was a wholly conclusory and subjective statement by the complainant. This is insufficient.
One of the general purposes of the Penal Law is, "To proscribe conduct which unjustifiably and inexcusably causes or threatens substantial harm to individual or public interests”. (Penal Law, § 1.05, subd 1; emphasis added.) It would thus appear that the drafters’ intent was to deal with those transgressions more serious than just hurt feelings or ordinary embarrassment. In the instant case, the Grand Jury had no evidence before it upon which a determination could be made whether the threatened publication of the photographs exposed the complainant to only hurt feelings or embarrassment (if in fact it even did that) or whether it rose to the level of subjecting the complainant to possible hatred, contempt or ridicule.
Whether something "tends to subject a person to hatred, contempt or ridicule” must be determined by the application of a "rule of reason” under the totality of circumstances, besides taking into consideration the specific nature, makeup and psyche of the complainant. Thus it was incumbent upon the District Attorney either to show the photographs to the Grand Jury, or at least give them a specific description of the content of the photographs. He did neither, and accordingly there was no evidence before the Grand Jury by which it could make a determination that the publicizing of the photographs would tend to subject the complainant to hatred, contempt or ridicule.
*1010 Accordingly, the defendant’s motion to dismiss the indictment based on the insufficiency of evidence before the Grand Jury is granted.
The defendant’s further motions are moot by reason of the court’s holding.
The People are granted leave to resubmit the charge to the Grand Jury.