OPINION OF THE COURT
Emmett J. Schnepp, J.
Petitioner is charged with nine violations of the Rules and Regulations of the Monroe County Sheriff’s Department to which he has entered a plea of not guilty. He has requested a hearing under general orders No. 73-60 of the department, which provides that if after a formal hearing an "employee is found to have been in violation as specified in the charges,” he is subject to dismissal, suspension, forfeiture of compensatory time, oral or written reprimand or exoneration.
From the record it appears that petitioner consulted with his attorney on September 12, 1977 and outlined to him his knowledge of alleged acts of misconduct by members of the Sheriff’s office. He claims that his attorney advised him that his knowledge of this misconduct was a violation of State and Federal statutes and instructed him not to discuss his knowl *541 edge outside his attorney’s presence. On September 15, 1977, accompanied by his attorney, he discussed with members of the Federal Bureau of Investigation ("FBI”) and the United States Attorney’s office his knowledge of the allegations and charges of false testimony, fabricated evidence and other acts of misconduct by other members of the Sheriff’s office, related to recently conducted trials of alleged members of organized crime. He stated that he received assurance that an application for immunity from Federal prosecution would be applied for and recommended.
Between the time he consulted with his attorney and September 15 and while off duty, a Deputy Sheriff informed him that Chief of Detectives, William Mahoney, desired him to immediately report to his office, which he failed to do. On September 16, 1977 petitioner, after completing his duties for the department, was brought from his home by the Under Sheriff to the office of the Sheriff, where he was questioned about his conversations with the FBI. Petitioner did not respond to the Sheriff’s questions, explaining that his refusal was based upon his attorney’s advice. Petitioner, who had been employed by the department upwards of 13 years, was suspended from his duties as Deputy Sheriff Investigator on September 22, 1977. Under date of September 30, 1977 he was charged with specific violations of the rules, which included the following: (1) insubordination for his refusal to answer the questions asked by the Sheriff and for his failure to comply with the directive to report to Mahoney; (2) the divulging of confidential information to his attorney on September 12, 1977 concerning the allegations and failure to report the information in his possession to his superiors; (3) the use of profane and abusive language toward departmental officers on September 13, 1977 and other occasions; and (4) miscellaneous charges of misconduct which occurred previously.
In response to his demand for a bill of particulars respecting the charges he was provided with various specific information in letter form. The hearing scheduled for November 1, 1977 was adjourned pending receipt of further particulars from respondent. Further proceedings were stayed by the order to show cause granted on November 10, 1977. This article 78 proceeding seeks to prohibit respondents from conducting any and all disciplinary hearings and direct his reinstatement.
Petitioner claims: (1) that a disciplinary proceeding would be in violation of his constitutional rights and of his privilege *542 against self incrimination; (2) that the charges against him have been punitively investigated and prosecuted in response to his refusal to answer the inquiries of the Sheriff on September 16, 1977; (3) that in connection with the charges related to prior misconduct, he is being subjected to multiple punishment for the same offenses; (4) that the hearing officer appointed in the proceeding by the Sheriff is inappropriate; and (5) that the response to his demand for particulars fails to inform him of the nature of the charges. He further states that he is entitled to reinstatement for the reason that his suspension has exceeded the 30-day period provided for in the rules for a disciplinary hearing.
Respondents have ■ moved to dismiss the petition and for judgment declaring that respondents may take any administrative action with regard to petitioner’s employment without court review, and that petitioner has neither a constitutional right to remain silent nor a right to counsel when being interviewed concerning internal departmental matters, and for other declaratory relief.
The Fourteenth Amendment’s due process clause protects a person’s liberty and property interests with procedural safeguards. For example, " '[wjhere a person’s good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.’ ” (Board of Regents v Roth, 408 US 564, 573; Wisconsin v Constantineau, 400 US 433, 437; Wieman v Updegraff, 344 US 183, 191.) Procedural due process accords an opportunity to refute charges which impose a stigma or other disability and foreclose a person’s freedom to pursue other employment opportunities. "Insubordination * * * is a charge which carries sufficient stigma to affect rights, liberty and property. On that charge, even a probationary employee is entitled to a hearing”. (Matter of Civil Serv. Employees Assn. v Wallach, 48 AD2d 923, 924; see, also, Matter of Minor v County of Nassau, 49 AD2d 882.) The absence of a regulation requiring a hearing, and the presence of a personal right of the Sheriff to appoint and remove officers "at will”, will not deprive the petitioner of his absolute right to a due process hearing to refute the charges levied against him.
Due process protects a person from the arbitrary exercise of power by the Government; it aspires to the fundamental principles of justice and fair play. In proceedings where a person’s property or liberty interest is at stake it entitles him *543 to notice and an opportunity to be heard as a matter of right. The hearing must be fair and this precludes arbitrary or capricious action. The person whose interest is at stake must be fully apprised of the nature of the charges against him, the evidence to be considered and the witnesses against him. Witnesses must testify under oath and be subject to cross-examination. One must be accorded a fair opportunity to present proof and to offer evidence in explanation or rebuttal. He has a right to a hearing before an unprejudiced and impartial official with no direct and substantial personal interest in the outcome, to a decision based upon an impartial review of evidence, and to findings supported by some competent evidence having probative value. (See, generally, 9 NY Jur, Constitutional Law, § 343 et seq.) These due process protections must be afforded the petitioner at his hearing. Moreover, this court notes that although there is no statutory requirement ordering the Sheriff to appoint any specific hearing officer, any questions relative to the qualifications of the hearing officer or any other facet of the proceeding, are subject to the court’s subsequent review.
The court now directs its attention to whether the petitioner could assert his constitutional privilege against self incrimination. Both the Fifth Amendment and section 6 of article I of the New York State Constitution provide that no person shall be "compelled in any criminal case to be a witness against himself’. Although this provision refers only to a criminal case, it has been interpreted to vest any witness with the privilege against self incrimination in any hearing in which testimony is taken. (See Richardson, Evidence, § 524.) Thus, the privilege may be invoked in any type of inquiry— civil or criminal; investigatory, accusatory or legislative. In short, the privilege extends to all compulsory oral testimony and permits one to refuse to testify if his answer may lead to self-incriminating evidence. The privilege does not arise until the questions are asked. (See, generally, 1 NY Jur, Administrative Law, § 97 et seq.) The witness by asserting the privilege is the initial arbiter of the legitimacy of the claim, and a presumption exists in favor of the judgment of the witness, which will be sustained by the court, unless it is "perfectly evident and manifest” that there is no legitimate claim to the privilege.
 It has been held that statements obtained from police officers, who are given the choice between forfeiting their jobs
*544 or waiving their privilege, were not voluntary but coercive, and their use in a subsequent criminal proceeding barred as unconstitutional. (Garrity v New Jersey, 385 US 493; see, also, People v Avant, 33 NY2d 265.) In Garrity, the court struck down a statute which presented police officers a harsh choice between surrendering their constitutional right or their job as unconstitutional, holding that public employees are entitled to all their constitutional privileges. As Justice Douglas stated in Garrity (p 500): "policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights * * * [tjhere are rights of constitutional stature whose exercise a State may not condition by exaction of a price.” However, in the case of Gardner v Broderick (392 US 273, 278) the court stated that if "a policeman had refused to answer questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself [citation omitted] the privilege against self-incrimination would not have been a bar to his dismissal.” Thus, if he is dismissed for his failure to waive his privilege against self incrimination, his constitutional rights have been violated. On the other hand, if he was discharged from office for failure to answer questions specifically concerning his official duties, no constitutional rights have been infringed. As the court stated in Sanitation Men v Sanitation Comm. (392 US 280, 285) public employees "subject themselves to dismissal if they refuse to account for their performance of their public trust, after proper proceedings, which do not involve an attempt to coerce them to relinquish their constitutional rights”. In this way, the courts have balanced two important and conflicting policy considerations: (1) the individual’s right to assert his Fifth Amendment privilege versus (2) the public’s interest in maintaining an honest and just police force. Certainly, the ferreting out of internal corruption relates specifically to a police officer’s official duties, and touches the public’s interest. The public has extended its trust to its police officers and has an interest in all matters directly relating to their performance of their official duties.
Charge one, specification one, relates to the refusal of petitioner to answer certain questions concerning allegations he was reported to have made to Federal authorities about the members and internal affairs of the Sheriff’s department. *545 Based on this record, it appears that he was asked questions about discussions he had with Federal officials — not questions "specifically, directly, and narrowly” relating to his duties. He had a right to exercise his privilege against self incrimination.
Charge four, specification one, and charge six, specification one, which relate to occurrences in December, 1976, were previously investigated and reported and no administrative action was taken. Apparently they were not deemed serious enough to require the issuance of formal charges. The department’s prior administrative "nonaction” precludes any further consideration of these charges. However, petitioner’s prior record may be considered in determining the appropriate punishment to be imposed in the event he is found to have committed a violation of any of the rules, regulations and general orders of the respondent for which petitioner is presently charged. (Matter of Bal v Murphy, 55 AD2d 26; see, also, Matter of Gibides v Powers, 59 AD2d 295.)
Petitioner had an absolute right to communicate with his attorney and-preserve the confidentiality of those conversations. An attorney is an instrument or agency to advance the ends of justice — he is an officer of the court, duty bound to zealously represent his client within the bounds of the law. The relationship between attorney and client is fiduciary in its character; it is a personal relationship involving the highest personal trust and confidence. Unless waived by the client, all his communications with his attorney are privileged and confidential. An attorney shall not be compelled to disclose a confidential communication between him and his client, nor shall the client "be compelled to disclose such communication, in any action, disciplinary trial or hearing, or administrative action, proceeding or hearing conducted by or on behalf of any state, municipal or local governmental agency”. (CPLR 4503, subd [a].) Thus, petitioner cannot be compelled to disclose the content of his conversations with his attorney. Not only is the subject matter outside the scope of his official duties, but all attorney-client conversations are privileged. Rules 4.8 and 4.9 were not designed to and do not prohibit a privileged communication between petitioner and his attorney. Petitioner had the right to refuse to disclose what he discussed with his attorney, and this cannot constitute a violation of these rules.
In examining petitioner’s right to counsel at the prehearing stage, this court notes that "no constitutional right is violated by the denial of assistance of counsel in purely *546 investigatory (preliminary) administrative proceedings” (Ann., 33 ALR3d 229, 249-250; see Matter of Groban, 352 US 330; Matter of Popper v Board of Regents of Univ. of State of N. Y., 26 AD2d 871), even though information obtained at the proceedings might well provide the basis for subsequent criminal charges. Moreover, there is nothing in the record to suggest the application of the Miranda doctrine. In any event, no statements were taken from or given by petitioner — he asserted his privilege and remained silent. No constitutional right of the petitioner was infringed by the absence of counsel at his meeting with the Sheriff.
Accordingly, as a matter of law petitioner may not be charged with violations of the rules and regulations and general orders specified in charge one, specification one, charge four, specification one, charge six as related to petitioner’s alleged conduct in December, 1976, and charge eight as related to rules 4.8 and 4.9. The scope of the hearing is limited to the remaining charges as specified in the particulars provided by the Sheriff. The petitioner can only be confronted with charges of which he was given notice in conformance with due process mandates. Respondent shall comply with petitioner’s request for further information concerning these charges for which a detailed answer has not already been submitted. It is directed that respondents provide this required information with appropriate dispatch and that the hearing date be rescheduled within a reasonable time. This court retains jurisdiction to implement the directions for an expeditious hearing. Any application by either party for relief beyond the scope of this determination is denied.