OPINION OF THE COURT
Anthony P. Savarese, J.
The defendant is charged with burglary in the second degree and arson in the second degree. He made a motion pretrial requesting, among other things, inspection of the Grand Jury minutes, dismissal of the indictment and suppression of statements allegedly made by him.
The motion to inspect the Grand Jury minutes and to *990 dismiss the indictment was granted to the extent that the court reviewed the minutes and found sufficient legal evidence to have been adduced to sustain the indictment. The motion to suppress the statements was granted to the extent of granting a hearing on that issue. A Huntley hearing was held before the Honorable Martin Rodell who thereafter granted the motion to suppress the statements.
The defendant now moves this court to reinspect the Grand Jury minutes to ascertain whether the evidence is legally sufficient to sustain the indictment absent the suppressed admissions and, if not sufficient, to dismiss the indictment.
Although not expressly stated, the motion is brought under CPL 210.20 (subd 1, par [b]) upon the ground therein provided that the evidence before the Grand Jury was not legally sufficient to establish the offense charged or any lesser offense. Authority for the motion is found in CPL 255.20.
A closely related issue was considered and resolved by the Court of Appeals in People v Oakley (28 NY2d 309). There the court held that an identification improperly procured, and therefore suppressed, was nevertheless sufficient to support a Grand Jury indictment. Judge Breitel, speaking for the court, said (p 311): "Because the evidence of identification was competent prima facie, but was held to be suggestive only upon a subsequent pretrial hearing, there was no insufficiency of evidence before the Grand Jury upon which the indictment was founded.”
The Oakley decision would be dispositive of the case at bar were it not for the following dictum which appeared at or near the conclusion of the opinion: "The situation with respect to confessions used in obtaining an indictment and subsequently suppressed may or may not present a different issue (see People v Colletti, 42 Misc 2d 158 * * *). That issue it is not now necessary or appropriate to reach.” (People v Oakley, supra, p 314.)
The instant case, since it involves admissions, would appear thereby to have been excluded from the holding in Oakley.
The Colletti case was decided by Justice J. Irwin Shapiro, then sitting in Trial Part. He dismissed an indictment, reasoning that after the confession was suppressed, "[t]his court is now charged with judicial knowledge and notice of the fact that [the defendant’s] written confession was not 'legal evidence’. It may, therefore, not evade its duty to protect [the *991 defendant’s] statutory and constitutional rights”. (People v Colletti, supra, p 159.)
The Court of Appeals stopped short of overruling Colletti but gave no hint of its views on the applicability of the Oakley doctrine to Colletti situations.* The defendant’s admissions of guilt in the present case place the issue squarely before this court.
Initially it should be noted that in both the Oakley and Colletti cases the courts had before them the trial record.
In Oakley, where the record disclosed that "from the total circumstances the identification by the witness was reliable and had an untainted source independent of the suggestive exhibition or 'show-up’ ” (People v Oakley, supra, p 312) and that there was "remarkably strong proof that the complainant had an unusual dramatic opportunity to observe, note, and recall the culprit’s appearance”, the court concluded therefore that "the undoing of the indictment would only result in the resubmission to the Grand Jury with the purpose of obtaining another indictment * * *. This would be a sterile repetition” (People v Oakley, supra, p 313).
In Colletti the court was unmoved by the quantum of proof at trial, observing that "[t]he fact that sufficient testimony was adduced on the trial to warrant the defendant’s conviction and to satisfy the statutory requirements in that regard does not validate an indictment which would be good if such additional proof had been presented to the Grand Jury”. (People v Colletti, 42 Misc 2d 158, 160, supra.)
In the case before this court there is no evidence other than that which appears in the Grand Jury minutes.
To authorize an indictment the evidence before the Grand Jury must be legal, competent and admissible (CPL 190.65). Legally sufficient evidence is defined as "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof’ (CPL 70.10, subd 1).
I have examined the Grand Jury minutes and find that without the admissions they contain insufficient evidence to sustain the indictment. It remains to determine whether this distinguishes this case form Oakley sufficiently to exclude it from the rule so firmly articulated in that decision by our State’s highest court.
*992 Confessions and identifications procured through police procedures differ significantly in impact at trial. It is difficult to imagine a blow more damaging to a defendant’s cause before a jury than his own self-indictment. Whereas the effect of an identification readily may be softened by cross-examination and extrinsic evidence to challange its reliability.
Additionally, while both improperly induced confessions and impermissibly suggested identifications enjoy constitutional protections, constitutional concern for confessions is greater. This is so because American revulsion against the age-old practices of trial and punishment based upon torture-extracted confessions lies at the very foundation of our Constitution and the jurisprudence which has grown around it.
And finally, if a confession be suppressed, it may not be offered to implicate the defendant, its use being limited to cross-examination for impeachment purposes. Whereas a suppressed police-induced identification does not necessarily preclude the offer of an in-court identification or other out-of-court identification not tainted thereby.
I believe then, in response to the court’s speculation in Oakley, that suppressed confessions do present different issues from suppressed identifications in these cases. But do those differences bar the extension of the Oakley rule to them?
Oakley established that an identification, competent prima facie, stands until nullified and rendered inadmissible by extrinsic proof. I am unable to distinguish confessions or admissions from identifications in this respect.
Accordingly, the admissions would, in the natural order of things, seem to be acceptable to supply an element of the People’s prima facie case before the Grand Jury. Justice Shapiro vigorously denies this, arguing that the constitutional affront of an improperly obtained confession is too grave to permit the imprimatur of respectability to attach to an indictment procured thereby.
I do not feel that this case requires this court to reconcile the views of these two illustrious and learned Justices or decide between them. Oakley has provided another solution, albeit a pragmatic one. There the court sustained the indictment thereby avoiding the inevitability of a representment, a "sterile repetition”.
In the instant case, upon a careful examination of the Grand Jury minutes I consider it unlikely that the People can *993 fill the void in the Grand Jury minutes resulting from suppression of the admissions. Thus a dismissal of the indictment now would, promptly and cleanly, put an end to an abortive prosecution. If, perchance, the People do have additional evidence or can procure it, the way is open to a representment and the People have lost nothing. It would serve no articulable purpose to sustain the indictment in these circumstances.
The defendant’s motion to dismiss the indictment therefore is granted, with leave to the District Attorney to resubmit to another Grand Jury.
The defendant is released on his own recognizance.

For discussion on a related issue see People vAvant (33 NY2d 265).