Bellacosa, J.
(dissenting). I would affirm the lower courts’ dismissal of the criminal information for assault in the third degree.
Two critical facts are uncontroverted. First, the prosecutor possessed and read the defendant’s immunized statement prior to questioning the defendant — the target of the Grand Jury investigation — in the presence of the Grand Jury. Second, the presenting prosecutor held the immunized statement in his hand in the presence of the Grand Jury and defendant while he questioned the target defendant. Thus, it is plainly inaccurate to state that the People did not "in any way” use defendant’s immunized statement (majority opn, at 329).
Reasonable inferences from those two conceded uses, as drawn by the courts below, include that the prosecutor read the statement as part of his general preparation of the case and particularly for his interrogation of the target defendant in the Grand Jury. Another reasonable inference is that the "smoking gun” item was displayed by the prosecutor, who held it in his hand at the critical time and place. The likely strategic advantage sought was to assist in structuring the interrogation and in intimidating the target witness against *333 testifying at variance with his prior sworn immunized statement. The prosecutor did not just discover this unauthorized evidence in his hands in the presence of the Grand Jury and the target witness at a critical juncture of this case.
County Court concluded on the appeal to that intermediate appellate court that "[defendant’s] statement was apparently used by the prosecutor to structure his examination of the defendant” (Monroe County Ct, Oct. 7, 1991, Wisner, J., slip opn, at 2). County Court also stated that it was "unable to parse out the effect of [the prosecutor’s] tactics” but found "the prejudice to the defendant [to be] clear” (id., at 4-5). I believe there is no basis for this Court to reject or undo the undisturbed facts and reasonable inferences drawn from the record by the courts below.
These record-rooted inferences are potent in themselves. They become dispositive, however, in the face of the unalterable burden placed on prosecutors in such matters and circumstances. Prosecutors must demonstrate that the use of forbidden evidentiary fruit was uncalculated and unconnected to the other evidence adduced before the Grand Jury. The prosecutor failed to meet or even try to meet that burden. Indeed, the Court acknowledges the burden and then ironically allows it to be shifted and inverted to the accused by relieving the prosecutor of providing any explanation and making the proper record. We should be unanimous that prosecutors who dominate the Grand Jury process should bear the burden and consequences of a barren record which fails to demonstrate that the People’s evidence was not obtained directly or indirectly through the use of the immunized statement and was derived from an independent source (see, majority opn, at 329). Targets, like defendant here, who are exercising a statutory right to testify by waiving immunity, should bear no such responsibility. They should not have to try to prove the negative of the prosecutor’s affirmative burden. Besides, targets and accuseds who find themselves in this virtually ex parte, vulnerable arena enjoy no meaningful opportunity to create a record. Thus, adverting repeatedly to the absence in the record of direct prejudicial impact on the defendant seems particularly unfair and misguided (see, e.g., majority opn, at 330, 331). It is not for us or the defendant to "suggest” a reason for "[the] prosecutor’s possession of an immunized statement during [the] Grand Jury presentation” (majority opn, at 332). That must remain the prosecutor’s burden to explain in fact, not in suggestion.
*334 People v Avant (33 NY2d 265) cannot salvage this case for the prosecution on some alternative, fallback rationale. In Avant, defendants waived immunity and appeared to testify before a Grand Jury. They claimed after indictment that their appearance and waiver were involuntary. We held that, as a general rule, dismissal of criminal charges was not required if other independent evidence was legally available and sufficient. But, significantly, the Court adhered to People v Steuding (6 NY2d 214), requiring dismissal of the indictment where the defendant is a target and is wrongly, i.e., involuntarily, compelled to testify before a Grand Jury.
In the instant case, defendant was the target. Thus, the general rule employed in People v Avant (supra, at 271) does not control; instead, the exception based on People v Steuding (6 NY2d 214, supra) should apply and supports dismissal of this criminal information. While defendant here does not challenge the voluntariness of his Grand Jury appearance or waiver of immunity, he did suffer from the District Attorney’s strategic use of defendant’s concededly immunized statement in and during his own Grand Jury testimony. That is equivalent in this context to the violation of defendant’s right against self-incrimination. Thus, the Steuding dismissal remedy, preserved and restated in Avant, applies and should be employed to correct the error and to guard against improper advantage.
The Court’s expressed caveat and uneasiness concerning the precedential implications of approving the prosecutor’s conduct here, while it reverses and reinstates the information (see, majority opn, at 332), provides more food for thought. The effective way to ease that concern is to uphold the lower courts’ dismissal, not to reverse their actions. Otherwise, prosecutorial tactics of an unfair dimension and impact are bound to continue and proliferate. A still deeper concern is that this case may be read as signalling a weakening of New York State’s long-standing, unique immunity doctrine designed not only to be more generous in protecting against the power of State-compelled self-incrimination, but also to keep prosecutors in check in the exercise of their already disproportionately potent Grand Jury prerogatives (see, CPL 190.40, 190.45; Kastigar v United States, 406 US 441, 453; People v Sobotker, 61 NY2d 44; see also, People v Betts, 70 NY2d 289; United States v North, 910 F2d 843).
On the record before us, the lower courts correctly con- *335 eluded that the prosecutor’s evident misuse in the Grand Jury of an immunized statement of the target defendant affected the integrity of the Grand Jury process. Inasmuch as the accusatory instrument suffers from a "legal impediment” (CPL 170.30 [1] [f]) and "fails to conform to the requirements of [the article governing the Grand Jury and its proceedings] to such degree that the integrity thereof is impaired and prejudice to the defendant may result” (CPL 210.35 [5]), this Court should sustain the dismissal of the information expressly authorized and contemplated by the interplay of those sections.
Chief Judge Wachtler and Judges Simons and Kaye concur with Judge Hancock, Jr.; Judge Bellacosa dissents and votes to affirm in another opinion in which Judge Titone concurs; Judge Smith taking no part.
Order reversed, etc.