OPINION OF THE COURT
Kenneth R. Fisher, J.
At a hearing pursuant to CPL 410.70 to determine whether the defendant has violated a condition of his probationary sentence, the defendant objects to the testimony of the People’s first witness, on the ground that he has revoked his prior authorization to disclose sex offender treatment information. The witness, counselor Mary Warchocki of the Sexual Behaviors Clinic at Evelyn Brandon Health Center, was evidently prepared to testify concerning defendant’s discharge from that facility on August 24, 2004, and the course of his sex offender treatment. (See amended information for delinquency, dated Aug. 31, 2004, at 2 [added specification No. 1 (A)].)
In connection with the objection, defendant handed up to the court a “Revocation of Release of Information,” dated October 4, 2004, signed by the defendant and defense counsel, which states that it “revokes any previous releases authorizing” Ms. Warchocki, “or any related agencies or individuals, to share any information.” The “revocation” states further that “[fit is especially important to note that Mr. Bercume specifically prohibits the sharing of any information relating to current or prior treatment by the above agencies and individuals with the Monroe County Probation Department, Monroe County District Attorney’s Office, or any other agency or individual whatsoever.” The witness was excused and an adjourned date was given to the parties to facilitate briefing concerning the merits of defendant’s objection to Ms. Warchocki’s testimony.
Background
Defendant was convicted upon a guilty plea of sexual abuse in the first degree on July 17, 2001, and was sentenced to five *422 years’ probation. As part of his probationary sentence, defendant signed a 36-paragraph orders and conditions of probation which provided as follows:
“3. You will answer all reasonable inquiries by your probation officer and notify your officer prior to any changes of address or employment.
“4. You will attend and successfully complete any evaluation, counseling, and/or treatment deemed appropriate by the probation department.
“5. You will sign any necessary releases of information, as permitted and authorized by law, to allow the probation department and the court to secure information regarding your counseling or treatment “29. You shall be evaluated for a Sexual Offender Treatment Program and will comply with any counseling deemed appropriate. You will pay for all services received.” (Orders and conditions of probation, dated July 17, 2001, 1Í1Í 3-5, 29; see, Penal Law § 65.10 [2] [d]; [3] [c]; [5].)
On June 24, 2004, defendant was charged with a violation of his probation, and was arraigned on July 26, 2004. The alleged violation concerned amended conditions of probation concerning home confinement, which were added on May 11, 2004, following a special request of the Probation Department, with the consent of the defendant.
According to the adjustment summary attached to the information for delinquency, defendant had a checkered history at the Evelyn Brandon Health Center’s Sexual Behaviors Clinic, although he had not, as of June of this year, been discharged from the program. It appears he took a sexual history polygraph examination in February of 2004, and the allegation is that he failed it, and only thereafter ultimately admitted to sexual offenses against additional victims in his prior history. When the defendant, in addition, admitted to his probation officer that he had a sexual attraction to babies (according to the probation officer’s account, he coupled that admission with a statement that “it happens to all guys”), the Probation Department became concerned, inasmuch as he was residing at the time with his wife and her one-year-old son. Defendant was directed to secure alternate housing, and Child Protective Services was notified and became engaged with the mother.
According to the adjustment summary, defendant was administered a second polygraph examination in April of 2004 *423 which, it is claimed, defendant failed. Thereafter, defendant admitted to “child contact at church, and in the WIC office . . . as well as targeting a little girl in his neighborhood.” According to the adjustment summary, it was in response to the second polygraph examination, and defendant’s subsequent admissions, that the probation officer was prompted to make application to the court to increase defendant’s supervision level to “Intensive” and to place the defendant on “electronic monitoring/ home confinement.” The application came on to be heard Friday, May 7, 2004, and the defendant, in the presence of counsel, consented to the amended order, which was signed by me on May 11, 2004, and the defendant on May 17, 2004, in the presence of his probation officer.[1] The June 24th information for delinquency alleges a violation of these added conditions.[2]
Subsequently, on August 31, 2004, an amended information for delinquency was prepared alleging that defendant, in addition, failed successfully to complete his sex offender treatment, in that he was discharged from the Sexual Behaviors Clinic at Evelyn Brandon Health Center on August 24, 2004. Additional violations of the home confinement rules were also alleged in this amended information. The matter was set down for a hearing and the instant objection to the testimony of the sex offender treatment provider was lodged. In a memorandum in opposition to the testimony of Ms. Warchocki, defendant contends that her testimony is barred by CPLR 4504, and the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as implemented by 45 CFR part 164.
Defendant’s argument proceeds on the assumption that the People cannot prove that he ever executed a waiver of confidentiality, whether under HIPAA or otherwise. That assumption is unfair, given the fact that the court aborted the examination of Ms. Warchocki immediately upon the lodging of an objection to her testimony, and therefore never gave the People an opportunity to have her testify that defendant executed (or not) any releases or waivers of confidentiality in connection with his treatment at Evelyn Brandon. Of course, if the defendant never executed any releases or waivers, the claim of confidentiality *424 would have merit, and the court would be faced with the question whether a court order for release of defendant’s treatment information would be warranted in the circumstances. (See generally, People v Silkworth, 142 Misc 2d 752 [Grim Ct, NY County 1989]; 45 CFR 164.512 [a], [e], [f] [1] [ii] [A].) Given the procedural posture of this case, it is simply not reasonable to assume that no releases were executed. Otherwise, there would have been no need for the defendant to execute a revocation of the same. This decision proceeds on the assumption that proof of a valid waiver and HIPAA authorization pursuant to 45 CFR 164.508 will indeed be forthcoming. Defendant retains his right to challenge the same as “defective” under the regulations, and, of course, different issues will be presented if he is successful in that endeavor, if pursued.
Discussion
The purported revocation of his prior authorizations (to use the HIPAA terminology), or his prior releases and waivers of confidentiality (to use the CPLR 4504 formula), does not prevent Ms. Warchocki from testifying about defendant’s progress (or lack thereof) in sex offender treatment at Evelyn Brandon prior to execution of the revocation. At the time of all the events in question, the releases were in full force and effect, and the course of defendant’s treatment was obviously imparted to Senior Probation Officer Sandra Migliore in reliance on them, because that information served as a basis for the history of the defendant provided in the adjustment summary attached to the information for delinquency and the amended information for delinquency. Accordingly, because the Monroe County Probation Department is a “third party who is completely unconnected to his or her treatment and who is not subject to any privilege” (Matter of Farrow v Mien, 194 AD2d 40, 44 [1st Dept 1993]; see also People v Bierenbaum, 301 AD2d 119, 141-142 [1st Dept 2002]), and the release or authorization (which the court assumes exists) authorized Evelyn Brandon to make the disclosures to the Probation Department which are described in the adjustment summary (Matter of Farrow v Allen, 194 AD2d at 44-45 [“no basis in logic to differentiate between a situation where the patient conveys the information directly to the unconnected third party and a situation, as here, where the patient authorizes his or her physician to convey such information”]), the privilege under CPLR 4504 was waived. Defendant’s attempt to reclaim his privilege by virtue of the purported revoca *425 tion is ineffectual to prevent testimony concerning defendant’s treatment covered by his waiver while it was in effect. (People v Al-Kanani, 33 NY2d 260, 265 [1973] [“once the privilege is thus waived, there is nothing left to protect against . . . ‘for when a secret is out it is out for all time and cannot be caught again like a bird and put back in its cage’ ”], quoting People v Bloom, 193 NY 1, 10 [1908]; M. Martin, D. Capra and F. Rossi, New York Evidence Handbook, at 360 [2d ed 2004] [“Once the privilege is waived, it cannot be reclaimed”].)
The result is essentially the same under HIPAA. The Health Insurance Portability and Accountability Act of 1996 (Pub L 104-191, 110 US Stat 1936) and 42 USC § 1320d-2 (d) and § 1320d-3 (a) authorized the United States Department of Health and Human Services to promulgate the regulations which are now commonly referred to as the HIPAA “Privacy Rule.” (45 CFR parts 160, 164.) Under the Privacy Rule, which generally preempts state law that is not itself more stringent in the protection of health information (Keshecki v St. Vincent’s Med. Ctr., 5 Misc 3d 539 [Sup Ct, Richmond County 2004]; 45 CFR 160.203), an “authorization” is required for the disclosure of “protected health information” before a “covered entity” may make disclosure. (45 CFR 164.508 [a] [1].) Although vendors, such as Evelyn Brandon, which have contracted with a probation department to provide health care and sex offender treatment services, are covered entities under the rule, the probation department itself is not. (See J. Gergits, Looking at the Law, The HIPAA Privacy Rule at a Glance, 67 Fed Probation 61 [Dec. 2003].)
An authorization may be revoked under the Privacy Rule “except to the extent that: (i) The covered entity has taken action in reliance thereon.” (45 CFR 164.508 [b] [5] [i].) Thus, the Privacy Rule contemplates that “information disclosed pursuant to the authorization . . . [is] subject to redisclosure by the recipient and [is] no longer . . . protected by this subpart.” (45 CFR 164.508 [c] [2] [iii] [emphasis supplied].)
Although the reference to “redisclosure by the recipient” (emphasis supplied) might be read out of context to prohibit re-disclosure by the covered entity (i.e., treatment provider) after an effective revocation, the use of the conjunctive “and” with the words “no longer . . . protected by this subpart” shows otherwise. When read with the exception to a patient’s right to revoke when the provider has acted in reliance on the authorization (45 CFR 164.508 [b] [5] [i]), such as by disclosing to a *426 third-party probation department, these words (i.e., “no longer . . . protected by this subpart”) make clear that the correct entity also may redisclose information which was subject to the authorization prior to the time it was revoked. (See N. Lawson, J. Orr and D. Klar, The HIPAA Privacy Rule: An Overview of Compliance Initiatives and Requirements, 70 Def Couns J 127, 136 [2003] [the reliance exception permits “a health care provider that wishes to use or disclose (protected health information) pursuant to an authorization and does so after obtaining an authorization from the individual may rely on the authorization, even if the individual immediately revokes it after the service has been provided”]; J. Clemens, New Federal Regulations Expand Protections for Privacy of Health Records, 74 NY St BJ 37, 40 [June 2002] [“if disclosure is made to an entity that is not a covered entity, the information will no longer be protected by HIPAA”]; see also, J. Gergits, Looking at the Law, 67 Fed Probation 61, 61-62 [Dec. 2003] [“offender’s right to revoke ... is neither unqualified nor without consequence, however(, because i)f a health provider has already acted in reliance on the authorization, a revocation does not rescind information that has already been disclosed . . . (although it would) prevent the disclosure of further information”]; id. at 61 [probation officer “may report a revocation of authorization to the court as a technical violation, and the Privacy Rule provides no refuge against a sanction for such revocation”].) Accordingly, Warchocki’s testimony is not barred by HIPAA, except to the extent her testimony might concern events postdating defendant’s revocation. Because defendant was discharged from treatment well before his revocation, testimony concerning postrevocation events is not expected.
Defendant relies on language in another part of the Privacy Rule which prohibits an entity from disclosing protected health information concerning a patient if it “know[s]” that the patient has effectively revoked his or her authorization. (45 CFR 164.508 [b] [2] [iii].) This provision would apply to the provision of treatment services which postdate the revocation, not those treatment services which were provided before that date and covered by an authorization which was relied on by the provider. Defendant contends that this reading of the Privacy Rule means that a patient cannot effectively revoke a prior authorization. To the extent that the purported revocation was intended to cover protected health information previously disclosed, or subject to disclosure, in reliance on the authorization, that is *427 true. Section 164.508 (b) (5) (i) is an “exception” to the right to revoke. But defendant is incorrect to suggest that his revocation would not be effective to prevent disclosure of protected health information arising from services provided after the date of the revocation. Defendant has a right under HIPAA to cut off access to his treatment information not covered by the reliance exception, but of course that would implicate the condition of his probation that he maintain releases and authorizations in effect.
Any other interpretation of the regulations would squarely place the defendant in the position of monitoring, unilaterally, the progress of his treatment at the expense of the Probation Department and the court, which have primary responsibility for such supervision. It would also effectively prevent a probation violation finding, because such a determination cannot be made in this state wholly on the basis of hearsay testimony. (People v Henderson, 256 AD2d 1131 [4th Dept 1998]; People v Raleigh, 184 AD2d 869, 870 [3d Dept 1992] [testimony of clinic director and discharge summary held competent nonhearsay evidence].) HIPAA’s Privacy Rule cannot be read sensibly to allow offenders to cut off access to treatment information whenever the offender begins to fail the treatment program, nor can it be read to require the Probation Department and the judiciary to resort to a court order to access protected health information previously disclosed (or subject to disclosure) in reliance on an authorization whenever an offender unilaterally chooses to revoke his authorization. “One recalls the venerable maxim of Pascal: ‘No one should be Judge in his own cause.’ Phrased less elegantly, in the vernacular, it is akin to having the fox guard the henhouse.” (Matter of Windsor Park Tenants’ Assn, v New York City Conciliation & Appeals Bd., 59 AD2d 121, 147 [2d Dept 1977] [Hawkins, J., concurring].)
Finally, defendant likens his situation to the plaintiff in Donhauser v Goord (314 F Supp 2d 119 [ND NY 2004]), who was held to have had his Fifth Amendment self-incrimination privilege abridged by state prison officials. Donhauser applied McKune v Lile (536 US 24 [2002]) to the circumstances of Oneida Correctional Facility’s apparent automatic denial or loss of good time credits when an inmate refused to participate in a sex offender counseling program which required the inmate to admit his sexually offending behavior. The decision, which was to grant a preliminary injunction against the state defendants, did not account for the Supreme Court’s more recent decision *428 in Chavez v Martinez (538 US 760 [2003]), which held that, generally, government officials do not violate an individual’s Fifth Amendment self-incrimination privilege, as applied by the Fourteenth Amendment to state officials, until the purportedly compelled statements are sought to be introduced against the individual at a criminal trial. (Id. at 766-767 [plurality op per Thomas, J.], 777-779 [Souter, J., concurring].)[3] See Wolfe v Pennsylvania Dept, of Corrections (334 F Supp 2d 762, 771-773 [ED Pa 2004]), for a different analysis of the issue than that offered in Donhauser, and which accounts for Chavez v Martinez (supra).
In this case, to the extent defendant is being prosecuted at all (see Minnesota v Murphy, 465 US 420, 435-436 n 7 [1984] [“(although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding”]; Matter of Darvin M. v Jacobs, 69 NY2d 957, 959 [1987] [“violation of probation giving rise to revocation proceeding is not a ‘crime’ or ‘offense’ . . . (n)or is a revocation proceeding a ‘criminal action’
. . . (which in all events terminates upon sentencing, but rather) is a ‘criminal proceeding’ brought after the completed ‘criminal action’ . . . (which has as its) purpose ... to determine if defendant’s subsequent acts violate the conditions of the original sentence not whether the acts constitute a crime”]), it is not for the acts disclosed by his admissions. Rather, the issue is whether defendant violated the terms of home confinement/electronic monitoring, and further whether he flunked his sex offense counseling program for reasons quite separate from his various admissions to counselors.[4] Proof of these violations, if they are to be sustained, could not conceivably consist of proof of the admissions themselves; indeed, the admissions themselves, and the fruits thereof that are within the reach of the exclusionary rule (United States v North, 920 F2d 940, 948 [DC Cir 1990] [per curiam]), would be largely irrelevant.
It must be emphasized that, unlike the virtually automatic loss of good time credits in Donhauser that was held to be too *429 great a penalty to survive Fifth Amendment analysis under the McKune formula, the defendant in this case originally sought a plea bargain providing for a probation sentence that included sex offender treatment conditions, and he later consented, voluntarily and with the advice of counsel, to the imposition of the home confinement/electronic monitoring conditions he is now alleged to have violated. Moreover, his decision to permit imposition of the added conditions came after (and therefore with full knowledge of) his admissions to the probation officer and treatment provider. Any alleged involuntariness of the admissions was not interposed as an objection to the added conditions of probation. Those conditions were, therefore, imposed on consent, not as a penalty, and the propriety of them cannot now be questioned.
Even if they had been ordered over objection, they would not have been imposed as a penalty or sanction for the sexual transgressions and fantasies concerning infants defendant acknowledged, but rather as a legitimate response to the circumstance that defendant was then living with a one-year-old infant. In either event, the State is not seeking to use defendant’s statements to prove a crime, nor is there any hint of criminal prosecution, much less one in which the People would seek to use his statements, or their fruits, against him. (Minnesota v Murphy, 465 US at 435-436 n 7; Matter of Darvin M. v Jacobs, 69 NY2d at 959.) The choices defendant made in this case were entirely voluntary, in three instances counseled (the plea; added conditions; and revocation of HIPAA authorization), and they were entirely within the range of choices which do not invoke the penalty cases upon which McKune and Donhauser rest. As in Allison v Snyder (supra), which concerned Illinois’s pretrial sex offender diversion program and its self-accusatory component, potential criminal defendants “are free to turn down the treatment Illinois offers . . . [which] may make it harder to show that their problems are behind them, that release is in order, and that the criminal charges should be dismissed, but this does not make the choice any less willing or intelligent.” (Id. at 1080.) In the unlikely event the People in this case seek to use defendant’s admissions against him, despite their dubious relevance to the violations alleged (motive is not an element of any one of the violations alleged), defendant would be as free as the plaintiffs in Allison v Snyder (supra) to *430 seek suppression, but he is “entitled to no more than that option.” (Id. at 1080.)[5]
Ultimately, however, defendant relies on the wrong line of cases. Donhauser and McKune concerned individuals who stood on their Fifth Amendment rights, asserted the self-incrimination privilege, and then sought to prevent imposition of the “penalty” they claimed was related to the permissible exercise of their constitutional rights. As explained in Minnesota v Murphy (supra), these penalty cases are different from those in which an individual “succumbed to the pressure placed upon him, failed to assert the privilege, and disclosed incriminating information, which the state later sought to use against him in a criminal prosecution.” (Id. at 434.) The case of Garrity v New Jersey (385 US 493 [1967]), discussed in Minnesota v Murphy (465 US at 434-435), is the classic example of the latter category of cases, in which it was held that a threat of discharge from employment for exercising the privilege is so powerful a sanction for its exercise that “the failure to assert the privilege would be excused, and the probationer’s answers would be deemed compelled and inadmissible in a criminal prosecution.” (Minnesota v Murphy, 465 US at 435; see also, Matter of Matt v Larocca, 71 NY2d 154, 159 [1987] [answers elicited upon threat of loss of public employment are deemed compelled and inadmissible in evidence in a subsequent prosecution]; People v Avant, 33 NY2d 265, 271 [1973] [no “ ‘difference of constitutional *431 magnitude between the threat of job loss to an employee of the State, and a threat of loss of contracts to a contractor’ ”], quoting Lefkowitz v Turley, 414 US 70, 83 [1973]; see also United States v Harloff, 807 F Supp 270, 280-281 [WD NY 1992]; People v Corrigan, 80 NY2d 326, 329 [1992].) But these cases are rare outside the public employment context. In the ordinary case, a defendant must exercise his privilege if he or she wishes; no automatic “immunity” arises except in cases such as are described above. Immunity is in this state almost entirely a creature of statute except in the public employment/contract context described above. (Cf., Matter of Brockway v Monroe, 59 NY2d 179, 188-190 [majority op], 190-191 [Jasen, J., dissenting] [1983].)
Inasmuch as defendant presents no reason to suspect that he was threatened with revocation of probation if he failed to answer the questions that prompted his admissions to the treatment provider and the probation officer (Minnesota v Murphy, 465 US at 435, 437-438), and because he makes no contention that the inquiries put to him were not relevant to his probationary status (id. at 435-436 n 7), defendant fails to bring his case within the “classic penalty situation” in which the failure to invoke the self-incrimination privilege is excused. (Id. at 435.) For these reasons, defendant’s reliance on Donhauser is unavailing to him.
Conclusion
Defendant’s objection is overruled.

. A notice to appear was sent to the defendant. Defendant appeared before the undersigned on May 7, 2004, his current counsel was assigned, and defendant consented to the proposed amended conditions after consultation with counsel.

. Defendant has never been charged with a crime concerning his admissions, nor is there any current threat of the same.

. Although a separate majority of the Chavez court allowed the possibility that a substantive due process claim might lie “in the event of genuine physical or mental coercion to speak, . . . [but because defendant] do[es] not contend that [his] arm[ ] w[as] twisted or [his] health imperiled,” relief is not available to defendant on this discrete ground. (Allison v Snyder, 332 F3d 1076, 1080 [7th Cir 2003], cert denied 540 US 985 [2003].)

. I assume that an offender cannot be discharged from a sex offender program merely for the act of complying with its requirement that the offender acknowledge his transgressions.

. The merits of the suppression issue were not reached in Allison v Snyder, but only the issue whether plaintiffs may recover damages. Under Chavez v Martinez (supra), of course, they cannot, but this does not settle the suppression issue, and neither does this decision. (Compare Minnesota v Murphy, 465 US at 437-438, and People v Smith, 87 NY2d 715, 720 [1996], with Minnesota v Murphy, 465 US at 435-436 n 7.) The point is not that Murphy prohibits a state from “asserting] that invocation of the privilege would lead to revocation of probation . . . creating] the classic penalty situation.” (Id. at 435.) No one suggests here that the Probation Department can seek revocation on account of an assertion of the privilege, and there would be no occasion to make such an argument; defendant did not assert his privilege at any relevant time during his probation supervision. The point is that Murphy holds that, in these circumstances, the privilege is not self-executing, that- the defendant must assert it if he wishes, and that, if he fails to do so, and makes admissions, those admissions are not necessarily involuntary and may not have to be suppressed, even in a criminal prosecution for the acts disclosed by the admissions. (Id. at 438-440; cf., People ex rel. Preileau v Warden of Rikers Is. Correctional Facility, 6 AD3d 178 [1st Dept 2004]; People v Eaddy, 235 AD2d 281 [1st Dept 1997]; People v Dyla, 142 AD2d 423, 442-443 [2d Dept 1988].) A fortiori, those admissions may not have to be suppressed in a violation of probation proceeding. Such a determination need not now be made. No motion to suppress has been tendered by the defendant.